## J. D. FOWLER v. WHITE MARSHALL, et al.

1. SPECIFIC PERFORMANCE, *When Decree for.* Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when upon all the facts it is equitable it should be done.

2. ———— He who asks specific performance should show the facts which make such a decree equitable; and a failure to do this justifies a refusal of the decree.

3. SPECIFIC PERFORMANCE; *Bar to Decree.* Lapse of time in which a party fails to perform his part of the contract or to insist upon his rights, will sometimes prove fatal; and especially after a claim of forfeiture by the adverse party, acquiescence in the claim for even a comparatively short period will often be taken as a consent to the forfeiture and a bar to any decree.

4. FACTS *Justifying Refusal of Decree.* Where F, enters into a contract of purchase of certain real estate at the price of $125, to be paid in monthly payments of $5 each, and after six or seven payments makes default, and the vendor then notifies him that the contract is forfeited, and he thereupon makes no further payments; and shortly thereafter the vendor sells and conveys the property for $200 to a party in possession, who is notified by both the vendor and F. of the claim of forfeiture, and nearly two years thereafter, F., who in the meantime has made no claim to the property, or to the money due upon the contract hereinafter referred to, comes into court and asks a decree of specific performance; and where it further appears that the party taking the deed originally entered into possession under a contract of purchase from F., upon which he paid $22, and there is nothing to show the terms or consideration of this last-named contract; and it further appears that F., when he notified such purchaser of the claim of forfeiture made by the original vendor, also told him that he could receive no more money on his contract of sale:

*Held,* That this court is not justified in reversing a judgment of the trial court refusing a specific performance.

### Error from Shawnee District Court.

ACTION brought by *Moore* against *Marshall* and wife, to foreclose a mortgage. *Fowler,* on his own motion, was made a party defendant. Trial by the court, at the April Term, 1881, when the court found generally against *Fowler,* and entered a decree foreclosing the mortgage in favor of *Moore,* and barring *Fowler* of any interest in the premises. *Fowler* brings the case to this court. The opinion states the facts.

*G. N. Elliott,* and *J. P. Greer,* for plaintiff in error.

*D. P. & H. C. Safford,* for defendant in error Marshall; *J. H. Stewart,* for defendant in error Moore.

The opinion of the court was delivered by

BREWER, J.: This is a triangular controversy, in which J. D. Fowler, Alfred Moore and White Marshall are respectively the three parties in interest. The facts are these: On July 2, 1878, Alfred Moore, holding the legal title to lot 20, Jefferson street, Topeka, sold the property to White Marshall, executed to him a warranty deed, and took back a mortgage for part of the purchase-price. Marshall defaulting in his payments, on May 13, 1880, Moore commenced an action in the Shawnee county district court to foreclose the mortgage, making Marshall and his wife the only defendants. Thereafter, J. D. Fowler, having on his own motion been made a party to the suit, filed his answer, claiming to be the equitable owner of the property by reason of a prior purchase from Moore, and also claiming that White Marshall entered into possession of the property as his tenant. The pleadings having been all completed by answers and replies, the case went to trial before the court without a jury; and in addition to the deed and mortgage between Moore and Marshall, these further facts appeared: On December 10, 1877, Fowler made a contract of purchase from Moore of the property, as evidenced by the following writing:

"Received of J. D. Fowler, five dollars, part payment of $125, and interest at 10 per cent. interest, to apply on purchase of lot No. 20, Jefferson street, city of Topeka, Kansas; balance of payments to be made in payments of $5, with interest on each payment as it becomes due at 10 per cent. Said $5 payments to be made on the 10th day of each month hereafter, until the full sum of $125 is fully paid.

ALFRED MOORE.

By E. Langel, Agent."

Upon this contract Fowler testified that he paid $35 to Langel, Moore's agent, though Moore testified he received only $20. After this contract, Fowler took possession and put $100 worth of improvements on the premises. Thereafter, and in May, 1878, he transferred the possession to Marshall. Fowler testified that Marshall entered as his tenant; that after Marshall had so entered there was an arrangement made between him and Marshall for a sale of the property, and a contract in writing drawn up but never signed. Marshall testified that he did not enter as tenant, but only upon a contract of purchase, and under such contract paid $22; in support of which he offered the receipts, which read that the money paid was "to apply on house and lot —— place." Sometime in June, 1878, one Rudolph, as the agent of Moore, (Langel having died,) notified Fowler that he had forfeited his contract, and that therefore he had sent the papers away. He also informed Marshall of the same fact. Fowler thereupon told Marshall, as he testifies, "that I could not receive any more money from him, as I could not perfect my arrangements with Moore; that I had no place to make my payments, and after this made no more demands upon him for money." After this notification by Rudolph of the forfeiture of his contract, Fowler made no more payments thereon, made no demand of money from Marshall, never tendered to Moore the remainder due on the contract, and never save by this answer insisted upon his rights in the premises, either as against Moore or Marshall. There is no testimony showing the terms of the contract between Marshall and Fowler, whether that was a tenancy as claimed by Fowler, or a purchase as asserted by Marshall, nor

of the unsigned contract spoken of by Fowler. No special findings of fact were made, but the court found generally against Fowler, and entered a decree foreclosing the mortgage in favor of Moore and barring Fowler of any interest in the premises. Fowler brings the case here for review, claiming that by his contract of purchase of December 10, 1877, he acquired an equitable interest in the premises, which he has never forfeited, which is a sufficient basis for a decree of specific performance, and which it was error to divest him of, as was done by the decree of the court.

The testimony is very meager and incomplete, and does not fully disclose all matters which we deem important to a full determination of the rights of the parties. We have hesitated somewhat whether we ought not to remand the case for a new trial, in order that the facts may be more fully shown. As it is, we are compelled to rest our decision somewhat on presumptions. Yet the party who now alleges error is the one whose duty it was to make a full disclosure of the facts, and any failure in this respect is one which while it makes against his claims, is also one for which he is responsible. He is asserting an equitable interest in the property, and he must see that all facts are presented which will justify a court of equity in recognizing and enforcing such interest. It is doubtless true that by his contract of December, 1877, he acquired an equitable interest in the property, an interest sufficient to lay the foundation of an action for specific performance; and it is also clear that there is no positive testimony showing an affirmative surrender or a forfeiture of such interest. But it is also true that an action of specific performance appeals largely to the discretion of the trial court, and that specific performance will not be decreed unless it affirmatively appears that it is equitable to do so. (Story's Eq. Jurisp., §§ 742, 769, 771.) The court having found generally against him, this must be construed as equivalent to a finding that Marshall did not enter into possession as his tenant as he claims, but only under the contract of purchase as Marshall testifies. So we think there are three grounds

which, taken together, are sufficient to justify us in not disturbing the decision of the court: First, the time which elapsed before Fowler made any effort to assert his rights; second, the assertion of forfeiture by Moore with the seeming acquiescence of Fowler; and third, the unknown terms of the contract by which Marshall took possession.

With reference to the first ground, in Fry on Specific Performance, § 730, it is said that:

"It is now clearly established, that the delay of either party in not performing its terms on his part, or in not prosecuting his right to the interference of the court by the filing of a bill, or, lastly, in not diligently prosecuting his suit when instituted, may constitute such *laches* as will disentitle him to the aid of the court, and so amount, for the purpose of specific performance, to an abandonment on his part of the contract."

A brief reference to some of the decided cases may not be uninstructive. In England, in *Marquis of Hertford v. Boore*, 5 Ves. 719, a delay of fourteen months was considered no bar. In *Eads v. Williams*, 4 De G. M. & G. 674, a delay of three and a half years was adjudged fatal. In *Southcomb v. The Bishop of Exeter*, 6 Had. 213, a delay from January 17, 1842, to August 30, 1843, was held to have the same effect. In *Lord James Stuart v. Railway Co.*, 1 De G. M. & G., 721, a delay from October, 1848, to July, 1850, was thought fatal. See also *Spurrier v. Hancock*, 4 Ves. 667; *Harrington v. Wheeler*, 4 Ves. 686; *Guest v. Homfray*, 5 Ves. 818; *Watson v. Reid*, 1 R. & My. 236. In this country, in *Hedenburg v. Jones*, 73 Ill., 149, four years were thought too long for the party to wait. In *Roby v. Cossit*, 78 Ill. 638, six years' delay was considered fatal. In *Rld. Co. v. Bartlett*, 10 Gray 384, three years were held to have the same effect. In *Gariss v. Gariss*, 16 N. J. Eq. 79, two years were considered too long for a party to wait; in *Haughwout v. Murphy*, 21 N. J. Eq. 118, two years and a half. See also *Merritt v. Brown*, 21 N. J. Eq. 401; *Miller v. Henlam*, 51 Pa. St. 265; *Eastman v. Plumer*, 46 N. H. 464; *Ritson v. Dodge*, 33 Mich. 463; *Iglehart v. Vail*, 73 Ill. 63; *Brown v. Hayes*, 33 Ga. 136;

*McDermid v. McGregor*, 21 Mich. 111; *Gentry v. Rodgers*, 40 Ala. 449; *Mix v. Balduc*, 78 Ill. 215.

·It is true that in some of these cases there were other considerations than the mere lapse of time, yet in others time was the only fact, and in all of them stress is laid upon it. We do not wish to be understood as holding that the mere lapse of time, in the case at bar, would of itself be sufficient to defeat plaintiff in error's recovery, but only refer to it as one of the matters which contribute to justify an upholding of the decision.

In reference to the second matter, and turning again to Fry on Specific Performance, we find in § 737 that the author says:

"And where one party to the contract has given notice to the other that he will not perform it, acquiescence in this by the other party, by a comparatively brief delay in enforcing his right, will be a bar; so that in one case two years' delay in filing a bill after such notice, and in another case one year's like delay, have been held to exclude the intervention of the court:" citing *Heaphy v. Hill*, 2 S. & S. 29; *Watson v. Reid*, supra.

Several of the authorities heretofore cited under the first point discuss and enforce this rule; notably the cases from 40 Alabama, 16 New Jersey Equity, and 21 Minnesota. In the latter case it appears that on July 14, 1868, one Austin, the owner of a tract of land, sold it to the plaintiff for $500; $200 cash and the remainder in one, two and three years. The first note, with all interest, was paid June, 1869. Possession was taken at the time of sale, and the land cultivated by plaintiff (although no buildings were erected) until February, 1872, when he abandoned the possession, selling the fences which were around the place. On February 27, 1872, he sent $40 in a letter to Austin, as part payment of the interest on the two unpaid notes. This money Austin returned, saying that he considered the contract forfeited, and declined to receive any further money from him. On May 7, 1872, Austin conveyed to defendant for $500, which was fully paid at the time. Plaintiff knew of this sale within three days after it was made. The defendant, after his purchase, put a house

and other improvements upon the premises. In March, 1873, plaintiff commenced his action for specific performance, and it was held that he was too late. Now in the case at bar the vendor's agent notified both Fowler and Marshall, in June, 1878, that the contract was at an end. Fowler declined to receive any more money from Marshall, made no further payments himself on his contract, or efforts to enforce his rights, until this suit some two years thereafter. He thus apparently acquiesced in the assertion of forfeiture, and abandoned his claim to the premises. Upon notice of this alleged forfeiture, Marshall bought, and paid his money.

Finally, we must assume, as heretofore stated, that the court found that Marshall entered under a contract of purchase, and upon that contract paid $22. Now the terms of that contract are not shown. We do not know whether that contract called for $20, or $200. Perhaps the consideration was so nearly paid by Marshall that equity would regard the remainder as coming within the maxim, *De minimis non curat lex*, especially after Fowler had himself declined to receive any more money from Marshall. Perhaps there were other conditions in it which would make it inequitable, at the present time, to enforce specific performance. In this case, as Fowler had contracted to sell to Marshall, he must show affirmatively that he is equitably entitled to relief, not merely against Moore his vendor, but also against Marshall his vendee. The silence of the record in this respect is against his claim, and we cannot hold that the court erred in refusing him relief without knowing the terms of the arrangement between him and Marshall. It is perhaps unnecessary to comment further. We have examined the authorities and questions presented and discussed by the various counsel, and for the reasons indicated have concluded that upon the meager record it cannot be adjudged that the district court erred in refusing affirmative relief to the plaintiff in error. The judgment will therefore be affirmed.

All the Justices concurring.