No. 54,693

Twin City Fire Insurance Company, Federated Mutual Insurance Company, St. Paul Mercury Insurance Company, St. Paul Fire and Marine Insurance Company, and St. Paul Guardian Insurance Company, *Appellants,* v. Fletcher Bell, Commissioner of Insurance, State of Kansas, *Appellee.*

(658 P.2d 1038)

Opinion filed February 19, 1983.

*Barry E. Warren,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and *Frank Saunders, Jr.,* and *Michael P. Oliver,* of the same firm, were with him on the brief for appellants.

*Robert L. Kennedy, Jr.,* special assistant attorney general, argued the cause, and was on the brief for appellee.

*James P. Rankin,* of Eidson, Lewis, Porter & Haynes, of Topeka, was on the brief for *amici curiae* American Insurance Association and Alliance of American Insurers.

The opinion of the court was delivered by

Miller, J.: Twin City Fire Insurance Company and four other Minnesota-based insurance companies brought this action in the Shawnee District Court against Fletcher Bell, Commissioner of Insurance of the State of Kansas, challenging the Commissioner's interpretation of K.S.A. 40-253 and his authority to assess "retaliatory" charges against the plaintiffs. The trial court held in favor of the Commissioner; the insurance companies appeal.

The facts are not in dispute. All five plaintiffs are foreign insurance companies domiciled in Minnesota and authorized to do business and doing business in Kansas. The plaintiffs have either paid or are subject to payment of "retaliatory" charges levied against them by the Commissioner. These charges are

principally if not entirely caused by the size of special injury fund assessments imposed upon plaintiffs by the State of Minnesota.

Both Kansas and Minnesota, in their overall workers' compensation plans, have created special injury funds. The Kansas fund is created by K.S.A. 44-566 *et seq.*, and is called the Workers' Compensation Fund. It was formerly called the Second Injury Fund. Its purpose is to encourage the employment in this state of handicapped persons. This fund makes direct payment of compensation to handicapped workers who are injured during their employment, when the injury would not have occurred but for a preexisting impairment. The Kansas fund is raised by annual assessments upon all insurance carriers and self-insurers insuring the payment of compensation under the Kansas Workmen's Compensation Act, based on the amount of money paid or payable in workers' compensation claims by each insurance carrier in the immediately preceding calendar year, and by general fund appropriations by the Kansas Legislature. See K.S.A. 1982 Supp. 44-566a(*b*) and *Stanley v. A & A Iron Works,* 211 Kan. 510, 506 P.2d 1120 (1973). The assessments are made by the Insurance Commissioner on July 1 of each year, and they are payable annually by October 1.

The Minnesota fund is created by Minn. Stat. § 176.131 (1982). It is called the Special Compensation Fund. Its purpose is similar to that of the Kansas Workers' Compensation Fund. The Minnesota fund does not make direct payment of compensation to injured workers; instead, compensation is paid by employers or their insurance carriers, and if the injury would not have occurred except for a preexisting impairment, the Special Compensation Fund reimburses the employer or the carrier. The Minnesota fund is raised by assessments upon all "employers" based upon the amounts of workers' compensation benefits payable. The term "employers" is defined to include insurance carriers writing workers' compensation coverage. The percentage assessment is determined annually on September 30, by the Minnesota commissioner, for the ensuing calendar year; payments are made by the "employers" to the fund, based on the percentage so fixed, each time compensation payments are paid. Payments to the fund are thus made throughout the year and not in an annual lump sum, as in Kansas.

The Kansas retaliatory statute, K.S.A. 40-253, provides:

"40-253. . . . Whenever the existing or future laws of any other state or country shall require from insurance companies or fraternal benefit societies organized under the laws of this state, applying to do business in such other state or country, any deposit of securities in such state or country for the protection of policyholders therein, or otherwise, or *any payment for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise,* greater than the amount required for such purpose from insurance companies or agents of other states by the then existing laws of this state, then, and in every case, all companies and agents of any such state or country, doing business in this state shall make the same deposit, for a like purpose, with the commissioner of insurance of this state, and pay to the commissioner of insurance for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such other state or country upon the companies of this state and the agents thereof." (Emphasis added.)

The principal issue on appeal is whether the Minnesota Special Compensation Fund assessments are a proper subject of "retaliation" in Kansas. The Commissioner has concluded that the Minnesota assessments are included within the "or otherwise" language emphasized above. The Commissioner included both Kansas Workers' Compensation Fund assessments and Minnesota Special Compensation Fund assessments in computing plaintiffs' liability for "retaliatory" assessments in 1976. Twin City's assessment for the Kansas fund, based on its total Workers' Compensation benefits paid in the prior year, was $14,592. Using the same base, the Commissioner concluded that Minnesota would have assessed a Kansas company doing business in Minnesota the sum of $179,341. Twin City's total "business payments" to Kansas totalled $112,319. The Commissioner determined that Minnesota would have assessed a Kansas company $243,883. Based on the data before him, the Commissioner made a retaliatory assessment against Twin City of $131,564. After payment, Twin City demanded a refund. The Commissioner held a hearing, denied the refund, and rejected plaintiffs' second injury fund arguments. Plaintiffs challenged the Commissioner's ruling by action in the district court; that court affirmed the Commissioner; this appeal followed. While we have stated the facts only as to Twin City, the facts related to the complaints of the other plaintiffs are similar.

Are the Minnesota Special Compensation Fund assessments a proper subject of retaliation under K.S.A. 40-253? In order to

decide this issue, we must review our earlier cases construing that statute.

A century ago our court considered a constitutional challenge to the then-existing retaliatory statute, L. 1879, ch. 50a, § 17, which was the same in all relevant parts as K.S.A. 40-253. In *Phoenix Ins. Co. v. Welch*, 29 Kan. *672 (1883), we upheld the constitutionality of the statute and said:

"[O]ur insurance laws provide that insurance corporations of other states may enter into this state and transact business upon certain limited conditions, designed only to protect the citizens of this state against irresponsible and fraudulent organizations elsewhere. In other words, this state holds itself out to all other states of the Union as willing to meet them upon a basis of substantial freedom as to all insurance transactions. It couples, however, with this general extension of freedom, a provision that if any other state shall, by its laws, hamper and restrict the privileges of corporations created under our laws, in the transaction of insurance business within its borders, the same burdens and restrictions shall be imposed upon corporations of that state, seeking to transact business with us. This provision is called in insurance circles a 'retaliatory clause.' It seems to us more justly to be deemed a provision for reciprocity. It says, in effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity; a demand for equality. As such, it is manifestly fair and just. It arouses no sense of injustice, and simply says to every other state in the Union: 'We will meet you on the basis of equality and comity, and will treat you as you treat us.'" 29 Kan. at *674-75.

Justice Brewer's interpretation of the statute has been repeatedly echoed, reaffirmed and applied. See *In re Insurance Tax Cases*, 160 Kan. 300, 303-04, 161 P.2d 726 (1945), and cases cited therein; and *Employers Casualty Co. v. Hobbs*, 152 Kan. 815, 817, 107 P.2d 715 (1940). In the latter case we said:

"The actual purpose of such legislation [retaliatory statute] is to equalize the burdens imposed upon foreign and domestic corporations." [Citations omitted.]

To serve the stated purpose of equalizing the burdens on foreign and domestic insurance corporations, the Commissioner must first determine what foreign exactions should be the subject of retaliation. The statute targets exactions by other states, by whatever name or nature, however taxed or collected, which are imposed by that state upon Kansas-based insurers doing business there. We have held that in applying K.S.A. 40-253, the Commissioner should consider the aggregate burden of exac-

tions rather than isolated charges against its Kansas counterpart. In *Employers Casualty Co. v. Hobbs,* 149 Kan. 774, 779-80, 89 P.2d 923 (1939), we said:

"Under our statutes an insurance company organized under the laws of another state or country is required to pay certain specified fees as a condition to its right to do business in this state. In order to insure that insurance companies organized under the laws of this state seeking to do business in another state may be accorded fair treatment, we have the retaliatory statute. Whether the statute comes into operation with respect to any foreign insurance company depends on the exactions required by the state of its domicile of Kansas insurance companies seeking to do business there. And where our statute refers to exactions by other states 'greater than the amount required for *such purpose* from insurance companies of other states by the then existing laws of this state' the purpose to be served is compliance as a condition to the right to do business. And we think it clear, both from the standpoint of the end sought to be accomplished by the statute, and the grammatical structure of the statute, that it was never intended there should be a comparison as between the statutory requirements of this state and of the state in which the foreign corporation is chartered so that a particular *tax should be measured against a like tax in the other state,* a particular fee measured against a like fee, etc., nor that taxes should be aggregated and measured against aggregated taxes of the other state, fees aggregated and measured against aggregated fees, etc. To so hold would compel us to ignore the phrase 'or otherwise' twice used in the statute, for it in and of itself contemplates exactions not included in those specified.  .  .  .

"The word 'amount' refers to all exactions under whatever name and in the aggregate; it is used in the singular, not in the plural, and should not be otherwise interpreted." (Emphasis in original.)

Plaintiffs argue that the statute is penal in nature and a taxing statute, and therefore it must be strictly construed. We do not agree. The purpose of K.S.A. 40-253 is to insure the equal treatment of Kansas companies doing business in other states. As Justice Brewer said long ago in *Phoenix,* it simply says to every other state, "We will meet you on the basis of equality and comity, and will treat you as you treat us." It is not designed to impose a penalty or to raise revenue, but to promote equality. Its success depends upon how *little* is collected in retaliation, not how much. See *Commonwealth v. Fireman's Fund Ins. Co.,* 369 Pa. 560, 87 A.2d 255 (1952). It does appear, however, that retaliatory statutes should be carefully construed and not invoked unless, as here, the restrictions or burdens imposed by the foreign state can be clearly established. See *Republic Insurance Co. v. Commissioner of Taxation,* 272 Minn. 325, 138 N.W.2d 776 (1965); Annot., 91 A.L.R. 795.

Plaintiffs argue that the Minnesota Special Compensation

Fund assessments are not payments extracted or a condition of the right to do business in Minnesota. We do not agree. The assessments are imposed by Minnesota upon every insurer who writes workers' compensation insurance in that state; it is collected by assessing a fixed percentage of every compensation payment the insurer makes, payable to the state when the amount of compensation is determined. It is a required payment to the state; payments thus paid become state funds, distributable by the state under the provisions of Minnesota law.

Plaintiffs argue that if these payments are subject to be included for retaliation, then payments on claims—which insurers are required to make—would also be subject to retaliation. This is absurd. Payments on claims are paid to injured workers. Special Compensation Fund assessments are paid to the State of Minnesota just as Workers' Compensation Fund assessments are paid to the State of Kansas. Both assessments are levied by the state, collected by it, and disbursed by it. *Commonwealth v. Fireman's Fund Ins. Co.,* cited by plaintiffs, is not persuasive. There the insurance carrier made a mandatory contribution to a private and nongovernmental nonprofit fire-fighting organization, whose purpose was to stand by damaged or threatened structures after the fire department had left, and thus to minimize the losses of fire insurance carriers. Payments to that organization are not comparable to the assessments here in issue.

Plaintiffs contend that application of the rule of ejusdem generis makes it clear that the Minnesota Special Compensation Fund assessments are not reasonably includable in the "or otherwise" language of K.S.A. 40-253. We disagree. As noted earlier in this opinion, the phrase "or otherwise" contemplates exactions by the states not specified in the statute, and which are a condition of doing business. The assessment here considered is such an exaction. It is comparable to a tax or fee for a special purpose.

Next, plaintiffs claim that the retaliatory tax is based upon speculation and conjecture. Not so. The assessment is based upon fixed rates, the total charges and assessments of Minnesota as compared to those of Kansas; it involves a matter of mathematical calculation; it may be computed with certainty. This argument has no merit.

Plaintiffs argue that if the judgment is affirmed, the Commis-

sioner should be limited to one year in collecting the retaliatory assessments. They assert that the Commissioner sought to collect the retaliatory assessments retroactively. The record does not support this argument. As soon as the Commissioner made the then-current year assessment for 1977, it was challenged by Twin City. The Commissioner also made an assessment against Federated Mutual for 1976, which is challenged. The Commissioner appears concerned with those and subsequent assessments. We see no reason to impose an arbitrary time limitation. There is no applicable statute of limitations, and such statutes do not run against the State unless specifically provided by law. *State Highway Commission v. Steele*, 215 Kan. 837, 839, 528 P.2d 1242 (1974). Plaintiffs rely upon *Equitable Life Assurance Society v. Hobbs*, 155 Kan. 534, 127 P.2d 477 (1942), which is readily distinguishable on the facts. In that case it appeared that the Commissioner was resurveying returns on which assessments had been computed and paid. These covered a period of many years. Such is not the case here, and the cited case is not persuasive. We will not impose a time limitation in the absence of any indication that the Commissioner is attempting to reach back beyond the years specifically involved in this litigation.

Finally, plaintiffs contend that the trial court applied an improper scope of review. K.S.A. 40-251 provides for actions by persons aggrieved by *unlawful or unreasonable* actions of the Commissioner. The trial court treated plaintiffs' claim as asserting that the Commissioner's action was *unreasonable;* they assert that their claim is that the action was both *unlawful and unreasonable.* We find that the court fully understood the plaintiffs' complaint, and applied the correct standard of review. From what we have said above, however, it does not appear that the Commissioner's action was either unlawful or unreasonable. His actions were fully authorized by law.

The judgment is affirmed.