The opinion of the court was delivered by
McELROY, J.A.D.
This is an appeal by the Director of the Division of Taxation (Director) from a decision of the Tax Court, 5 N.J.Tax 326. That court held plaintiffs, insurance companies domiciled in Massachusetts but licensed to do business in New Jersey may obtain credit for payments made to the New Jersey Second Injury Fund pursuant to N.J.S.A. 34:15-94 in calculating the amount due this state under our retaliatory tax law, N.J.S.A. 17:32-15. The decision of the Tax Court appears at 5 N.J.Tax 326 (1983).
We affirm substantially for the reasons advanced by Judge Michael A. Andrew in that decision, to which we add the following.
Retaliatory tax laws are a fact of life in the existence of any insurance company that does business on a national level. Each state which has sufficient number of domiciliary companies doing such business has a retaliatory tax law, the purpose of which is to protect its domestic insurance companies from the imposition by a sister state of taxes or other costs of doing business which exceed the costs of doing business in the domiciliary state. Where a state imposes such higher costs of doing business upon insurance corporations of another state the latter *616 state retaliates by imposing the same costs upon the insurance companies of that state conducting business within its borders. Although such statutes may incidentally produce revenue, the primary purpose sought to be achieved is to compel the foreign state imposing greater costs to lower the “premium or income or other taxes, ... fees, fines, penalties, licenses, deposit requirements or other obligations,” or to remove any “prohibitions or restrictions ... imposed upon” the insurance companies of the domiciliary state. N.J.S.A. 17:32-15; See, Western & S.L.I. Co. v. Bd. of Equalization, 451 U.S. 648, 668-670, 101 S.Ct. 2070, 2083-2084, 68 L.Ed.2d 514 (1981).
A good description of the nature and purposes of retaliatory statutes was given by Justice Brewer of the Supreme Court of Kansas in Phoenix Ins. Co. v. Welch, 29 Kan. 667, (1883):
[0]ur insurance laws provide that insurance corporations of other states may enter into this state and transact business upon certain limited conditions, designed only to protect the citzens of this state against irresponsible and fraudulent organizations elsewhere. In other words, this state holds itself out to all other states of the Union as willing to meet them upon a basis of substantial freedom as to all insurance transactions. It couples, however, with this general extension of freedom, a provision that if any other state shall, by its laws, hamper and restrict the privileges of corporations created under our laws, in the transaction of insurance business within its borders, the same burdens and restrictions shall be imposed upon corporations of that state, seeking to transact business with us. This provision is called in insurance circles a ‘retaliatory clause.’ It seems to us more justly to be deemed a provision for reciprocity. It says, in effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity: a demand for equality. As such, it is manifestly fair and just. It arouses no sense of injustice, and simply says to every other state in the Union: ‘We will meet you on the basis of equality and comity, and will treat you as you treat us.’ [29 Kan. at 674-75].
Many cases echo Justice Brewer’s sentiments. Bankers Life Co. v. Richardson, 192 Cal. 113, 218 P. 586, 591 (1923) (Ultimate object of retaliatory laws is to secure reciprocity); State v. Ins. Co. of North America, 71 Neb. 320, 99 N.W. 36, 38 (1904) (Retaliatory laws demand reciprocal equality and fairness); O’Brien v. Continental Ins. Co., 67 Ind.App. 536, 116 N.E. 929 (1917) (Retaliatory tax desires to secure for insurance *617 companies even-handed treatment); Pacific Mut. Life Ins. Co., 161 Wash. 135, 296 P. 813, 814-815 (1931) (Purpose of retaliatory statutes is simply to equalize the amount of tax payable); Employers Cas. Co. v. Hobbs, 152 Kan. 815, 107 P.2d 715 (1940) (Purpose of retaliatory statute is to equalize burdens imposed upon foreign and domestic corporations); Life & Cas. Ins. Co. v. Coleman, 233 Ky. 350, 25 S.W.2d 748, 749 (1930) (Primary purpose of retaliatory tax is not to raise revenue but to secure for Kentucky insurance companies even-handed treatment by legislatures of other states); Massachusetts Mut. Life Ins. Co. v. Knowlton, 94 N.H. 409, 54 A.2d 163, 165 (1947) (Retaliatory laws aim at removing inequalities actually suffered or threatened); See generally, Annotation, “Constitutionality, construction, operation, and effect of retaliatory statutes against foreign corporations doing business within state,” 91 A.L.R. 795 (1934). One author has characterized the reciprocal nature of a retaliatory tax law as, “the return of a favor for a favor” while on the other hand he described its retaliatory nature as, “a return of a disfavor with disfavor.” Pelletier, Insurance Retaliatory Laws, 39 Notre Dame Lawyer 246 (1964).
In operation, retaliatory statutes frequently impose upon the foreign corporation a greater cost of doing business in the retaliating state than that which is imposed upon its domestic corporations doing a similar kind and amount of business. Nevertheless, retaliatory statutes have been held not to violate the equal protection requirements of the Fourteenth Amendment. Western & S.L.I. Co. v. Bd. of Equalization, supra, 451 U.S. at 671-674, 101 S.Ct. at 2084-2086.
This case involves an ironic twist in the application of retaliatory statutes because as applied by the Tax Court the statute will not benefit New Jersey carriers.
Although Massachusetts, as does New Jersey, requires all workers’ compensation carriers to make contributions to its Second Injury Fund, M.G.L.A. c. 152 § 65, during the tax years at issue its Fund was financially adequate to meet its anticipated needs and no assessments were made against companies *618 doing such business there. New Jersey, which imposes a rate of contribution to its Second Injury Fund which is among the highest in the country, required plaintiffs to make the contributions required by N.J.S.A. 34:15-94. If second injury fund assessments are required to be considered under N.J.S.A. 17:32-15, the disparity in charges levied by the two states would have to be considered in calculating the amount of retaliatory tax plaintiffs owed New Jersey for the years in question. This is so because in administering the retaliatory tax New Jersey requires a foreign carrier to fill out a form computing the liabilities imposed by New Jersey and those imposed by its home state upon a hypothetical New Jersey company doing the same kind and amount of business in the foreign state. If the amount of taxes computed in the second step exceeds the liabilities imposed by New Jersey, the difference is the amount of retaliatory tax owed.
When filing their retaliatory tax returns for the years in question plaintiffs did not calculate either state’s second injury fund assessments in computing the retaliatory tax. They later filed amended returns which included the disparity in fund assessments and sought refunds of some of the retaliatory taxes previously paid. The Director declined to credit plaintiffs with the amounts assessed for Fund contributions, holding such payments were not allowable deductions against the retaliatory tax due under N.J.S.A. 17:32-15.
It is clear that the Director’s approach to computation of retaliatory taxes is to apply the aggregate of financial exactions required of insurance companies by New Jersey and to measure this total against the aggregate of the same burdens imposed by a sister state upon our corporations doing business in that state. The methodology is not to compare respective financial exactions item by item but to total them. Thus, if in the aggregate another state imposes a greater financial burden upon our insurance carriers, the retaliatory tax is the amount of the difference between those two totals. If, however, the total burden imposed on our companies by another state is less than that which we impose upon all carriers in our state, no retaliate *619 ry tax is levied. We are not here called upon to determine whether employment of the aggregate method of calculation is required or even permitted by N.J.S.A. 17:32-15. We observe in passing that in some jurisdictions retaliatory statutes specifically prescribe that method of computation and in other states, where statutes do not so provide, aggregation of financial exactions have been judicially approved. The aggregate method appears to be the manner by which most states calculate retaliatory taxes. See the discussion in Pelletier, Insurance Retaliatory Laws, supra at 254-255. Since, however, the aggregate method is employed by our state agency, the question of whether contributions to the Second Injury Fund of both states is a financial exaction of the type required to be considered by N.J.S.A. 17:32-15 assumes particular importance. If retaliatory tax liabilities were simply treated by the item by item method, New Jersey’s high rate of contribution to the Second Injury Fund would call for no imposition of a retaliatory tax as to that item.
The Director and amici[1] contend that N.J.S.A. 17:32-5 does not require the second injury fund assessments imposed by New Jersey and Massachusetts to be entered into the computation of the retaliatory tax because they are not among the charges listed in that statute and they are not of the type of financial exactions mentioned there. Here, we are urged to apply the doctrine of ejusdem generis. Resnick v. E. Brunswick Tp. Bd. of Ed., 77 N.J. 88, 100, 389 A.2d 944 (1978). They further argue that the state agency in administering the statute has never regarded these assessments as being statutorily includable, thereby invoking the principle that courts should give due deference to an agency’s interpretation and exercise of its statutorily delegated responsibility. Newark v. Natural Resources Coun. D.E.P., 82 N.J. 530, 414 A.2d 1304 (1980), cert. den. 449 US. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). Finally, they assert that inclusion of these assessments would *620 not further the general purposes of N.J.S.A. 17:32-15 because to do so would encourage other states to retaliate and to use New Jersey’s high assessment to the disadvantage of domestic insurers doing business elsewhere.[2] See, Twin City Fire Insurance Co. v. Bell, 232 Kan. 813, 658 P.2d 1038 (1983) (second injury fund assessment of Minnesota used against a Minnesota insurer doing business in Kansas. The Court held the higher Minnesota assessment was exacted as a cost of doing business and, therefore, was necessary to the computation of Kansas’ retaliatory tax. Id., 658 P.2d at 1041-1042).
N.J.S.A. 17:32-15 in pertinent part provides:
When by the laws of any other state ... any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon New Jersey insurance companies, ... doing business in such other State ... which are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon insurance companies ... of such other State ... doing business in New Jersey ... so long as such laws continue in force the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon insurance companies ... of such other State ... doing business in New Jersey____ The provisions of this section shall not apply to ad valorem taxes on real or personal property or to personal income taxes.
 The words, “premium or income taxes, fees, licenses” and “deposit requirements” are of a class of financial exactions which clearly are a cost of doing insurance business in either state. “Fines” and “penalties” are of another class, usually imposed because of infractions of state regulations or laws. “Prohibitions and restrictions” are of yet another class, dealing with laws or regulations limiting the kind or, perhaps, amount of business in which a company may engage. The phrase, “or other obligations” is most general and in the context used is obviously intended to emphasize legislative intent to encompass all costs of doing business and all other impositions. The statute clearly and with deliberation intends to include all *621 financial burdens and all restrictions laid upon New Jersey insurers by a sister state. Assessments levied by a state to fund a second injury program are obviously within this all inclusive statutory net. They are state imposed payments assessed against and payable by all insurers who write workers’ compensation insurance and are a cost of doing that business. The foregoing analysis and that made by the Tax Court in reply to the same arguments appellant raises here, 5 N.J.Tax at 333-336, requires rejection of appellant’s contentions.
Appellant’s argument that his interpretation of the act in administering it requires judicial deference must also be rejected. What is here involved is not the wisdom of an administrative action but whether that action is “statutorily authorized.” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563, 384 A.2d 795 (1978). The retaliatory tax statute mandatorily requires that a comparison of obligations imposed by New Jersey and the foreign state be made and the aggregate method of computation of this tax, customarily employed by appellant, requires a credit be given where it is due.
We are aware that most states do not use special assessments such as those here considered in calculating retaliatory taxes. See, however, Twin City Fire Ins. Co. v. Bell, supra. We also acknowledge that because of the differences in the manner in which second injury fund assessments are made by the laws of many states a serious administrative problem is involved. Nevertheless, the directive of our statute is clear. The difficulties involved in administrating the retaliatory tax should be addressed to the Legislature which has the power to modify the statute. See, N.J.S.A. 17B:23-5(b) where in the revision of the insurance code regulating life and health companies the Legislature exempted special purpose obligations and assessments from the retaliatory tax used as to those types of insurance.
We acknowledge appellant’s view that the effect of including second injury fund assessments may result in greater retaliatory taxes being imposed upon New Jersey insurers by other *622 states. We agree that in such event, the protection of domestic insurers is thereby diminished in degree. Nevertheless, the statute requires these assessments to be put into the tax calculation. Unfortunately, retaliatory tax laws when fairly and equitably administered create this inescapable result. All retaliatory tax statutes are swords with two edges. The purpose of such a statute is “to induce [a] foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state.” Western & S.L.I. Co., supra, 451 U.S. at 669, 101 S.Ct. at 2083. Unhappily, that purpose is defeated to the degree the enacting state increases its financial exactions upon all foreign and domestic insurers doing business within its borders. Here the spectre of other state retaliation is caused by New Jersey’s intent that more compensation be placed in the hands of its more seriously injured workers, a purpose that increases the needs of the Second Injury Fund. Commendable as that purpose may be, it is undertaken at the cost of creating an irresoluble tension between that aim and the intent to protect domestic insurers. Unfortunately, even in the area of governmental purpose it is impossible to both eat the cake and have it as well.
Affirmed.

The companies appearing in this role are domestic insurance companies who, among other things, sell workers' compensation insurance in other states.

In support of these arguments, appellant raises a number of contentions including one which suggests the Tax Court's decision renders N.J.S.A. 17:32-15 unconstitutional. We do not treat these assertions because we regard them as clearly without merit. R. 2:ll-3(e)(1)(E).