KUSKIN, J.T.C.
Plaintiff, Aetna Life Insurance Company, is a Connecticut corporation which, during tax year 1996, conducted a portion of its life and health insurance business in New Jersey pursuant to a license issued by the New Jersey Department of Banking and Insurance. New Jersey imposes a retaliatory tax on foreign life and health insurance companies pursuant to N.J.S.A. 17B:23-5. In general, the tax is calculated by comparing the taxes and related financial obligations imposed in New Jersey on the foreign insurance company with the taxes and financial obligations which *89 would be imposed in the foreign state on a New Jersey insurance company with identical business activities in that state. If the taxes and financial obligations imposed by New Jersey are lower than those that would be imposed by the foreign state, New Jersey collects the difference as retaliatory tax.
Plaintiff contests defendant’s method of calculation of retaliatory tax for tax year 1996. Specifically, plaintiff contends that the express language of N.J.S.A. 17B:23-5 mandates that (i) special purpose assessments imposed in New Jersey be included in the calculation as taxes and related financial obligations paid in this State, and (ii) special purpose assessments that would be imposed in a foreign state on a New Jersey insurer be excluded from the calculation. Defendant contends that special purpose assessments payable by a foreign insurer in New Jersey, as well as those that would be payable by a New Jersey insurer in a foreign state, are to be disregarded in calculating retaliatory tax.
Based on its interpretation of the statute, plaintiff seeks a refund of $725,180. In addition, plaintiff seeks recovery of litigation costs under N.J.S.A. 54:51A-22(a) on the grounds that defendant’s statutory interpretation is “without reasonable basis in fact or law.” N.J.S.A. 54:51A-22(e). Both parties have moved for summary judgment. For the reasons set forth below, I grant plaintiffs motion for summary judgment as to its retaliatory tax liability and deny defendant’s motion. However, I deny plaintiffs application for litigation costs and grant defendant’s motion for summary judgment on this issue.
Plaintiff filed a 1996 New Jersey Annual Report of Premium Taxes and Other Obligations for Life Insurance Companies shoving retaliatory tax liability of $848,768 which plaintiff paid. Thereafter, plaintiff filed two amended reports. The first requested a refund of $68,847 of retaliatory tax on the grounds that, in calculating its tax liability, plaintiff failed to include as a New Jersey obligation an assessment for the support of the Department of Banking and Insurance imposed under N.J.S.A. 17:1C-19. The New Jersey Division of Taxation (“Division”) approved this refund.
*90 Plaintiffs second amended report requested a refund of $725,180 on the grounds that plaintiffs calculations of retaliatory-tax in its initial report and first amended report incorrectly failed to include as payments in New Jersey the sum of $71,857 paid as an insurance fraud prevention assessment pursuant to N.J.S.A 17:33A-8g and $2,086,647 paid as an individual health coverage program assessment pursuant to N.J.S.A. 17B:27A-12.[1] The Division denied the refund request as to the fraud prevention assessment on the basis that this “is a special purpose assessment,” and denied the refund request as to the individual health coverage program assessment on the basis that “there is no legislation which allows for a credit” of this assessment. Plaintiff then filed a protest with the Division. On April 27, 2001, the Division issued its final determination denying the refund request, and this appeal followed.
The statute imposing a retaliatory tax on life insurers provides, in relevant part, as follows:
a. When by or pursuant to the laws of any other state ... any taxes, licenses and other fees, in the aggregate, and any fines, penalties, deposit requirements or other obligations, prohibitions or restrictions are or would be imposed upon New Jersey insurers, ... which are in excess of such taxes, licenses and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements or other obligations, prohibitions, or restrictions directly imposed upon similar insurers ... of such other State ... under the statutes of this State, so long as such laws of such other state ... continue in force or are so applied, the same taxes, licenses and other fees, in the aggregate, or fines, penalties or deposit requirements or other obligations, prohibitions, or restrictions of whatever kind shall be *91 imposed by the commissioner upon the insurers ... of such other State ... doing business or seeking to do business in New Jersey.
b. This section shall not apply as to ... special purpose obligations or assessments imposed by another State ... in connection with particular kinds of insurance; ....
[N.J.S.A. 17B:23-5.]
Plaintiff contends that this statute is clear on its face and should be applied in a manner consistent with its express provisions so that the fraud prevention and individual health coverage program assessments, which plaintiff describes as special assessments covered by paragraph b of the statute, are included in the amount of taxes and obligations paid in New Jersey.
Defendant does not dispute plaintiffs assertions that these assessments constitute special purpose assessments under paragraph b of N.J.S.A. 17B:23-5. Defendant contends, however, that, notwithstanding the express reference in that paragraph to special purpose obligations or assessments “imposed by another State,” the assessments should be excluded from the calculation of “taxes ... or other obligations” imposed in New Jersey under paragraph a of the statute.
Defendant asserts that his statutory interpretation is consistent with, and effectuates, the purpose of the retaliatory tax. The United States Supreme Court described this purpose as the promotion of “the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes.” Western and Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514, 531, (1981). Our Appellate Division described the purpose of the tax as follows in the context of a dispute under N.J.S.A. 17:32-15, a companion statute to N.J.S.A. 17B:23-5, imposing retaliatory tax on foreign property and casualty insurance companies:
Retaliatory tax laws are a fact of life in the existence of any insurance company that does business on a national level. Each state which has sufficient number of domiciliary companies doing such business has a retaliatory tax law, the purpose of which is to protect its domestic insurance companies from the imposition by a sister state of taxes or other costs of doing business which exceed the costs of doing business in the domiciliary state. Where a state imposes such higher costs of doing business upon insurance corporations of another state the latter state *92 retaliates by imposing the same costs upon the insurance companies of that state conducting business within its borders. Although such statutes may incidentally produce revenue, the primary puipose sought to be achieved is to compel the foreign state imposing greater costs to lower the “premium or income or other taxes, ... fees, fines, penalties, licenses, deposit requirements or other obligations,” or remove any “prohibitions or restrictions ... imposed upon” the insurance companies of the domiciliary state.
[Employers’ Fire Insurance Co. v. Director, Division of Taxation, 6 N.J.Tax 613, 615-16 (App.Div.1984).]
Defendant argues that, in order to accomplish the statutory purpose, special purpose assessments payable in a foreign state and those payable in New Jersey must be treated in a symmetrical manner, so that all such assessments are excluded from the calculation of retaliatory tax. Defendant asserts that failure to exclude both foreign and New Jersey special purpose assessments from the calculation would result in an absence of equality and even-handed treatment, in violation of the legislative purpose.
Defendant’s argument is not convincing because interpreting the statute to exclude only special purpose obligations and assessments imposed “by another state” could fulfill the purpose of the retaliatory tax. If special purpose obligations and assessments imposed by a foreign state and by New Jersey are excluded in calculating retaliatory tax, the amount of tax will increase over the amount due if special purpose obligations and assessments imposed by New Jersey are included and those imposed in the foreign state are excluded. The Legislature rationally and reasonably could have concluded that, in the life and health insurance context, the total taxes and related obligations payable by a New Jersey insurer, not simply premium tax rates (which defendant contends are the primary focus of the retaliatory tax) should be considered. Reducing retaliatory tax by excluding only special purpose obligations and assessments imposed by a foreign state might encourage foreign states to make a similar computation with respect to the taxation of New Jersey life insurers doing business in those states. This would result in lower retaliatory tax liability of New Jersey insurers in the foreign states.
In addition to his argument based on the purpose of the retaliatory tax, defendant contends that legislative history and *93 administrative practice support his interpretation of N.J.S.A. 17B:23-5. I reject these contentions because defendant’s understanding of legislative history is flawed and the administrative practices on which he relies are defective.
Defendant’s argument as to legislative history is based on a Senate Committee Statement to a bill amending N.J.S.A. 17:32-15 which, as described above, imposes retaliatory tax on insurance companies not covered by N.J.S.A. 17B:23-5. As originally enacted, N.J.S.A. 17:32-15 contained no provision relating to special purpose obligations and assessments. In 1985, the statute was amended by L.1985, c. 88, § 1 to exclude from the calculation of retaliatory tax “special purpose assessments imposed in connection with particular kinds of insurance.” Defendant points to the following language in the Senate Revenue, Finance and Appropriations Committee Statement to S. 1749, the bill enacted as L.1985, c. 88, § 1: “This bill clarifies the original intent of the retaliatory tax statute to exclude special assessments relating to specific types of insurance coverage. In doing so, this legislation would bring [this statute] into conformance with the existing retaliatory tax statute for life insurance companies.” Defendant contends that the quoted language indicates a legislative intention that the calculation of retaliatory tax under N.J.S.A. 17B:23-5 should exclude all special purpose obligations and assessments.
Defendant ignores the significance of an amendment to S. 1749 before enactment. As originally introduced, this bill amended N.J.S.A. 17:32-15 to exclude “special purpose obligations or assessments imposed by another state in connection with particular kinds of insurance” (emphasis added). The Statement annexed to the original bill contained the following sentence: “In amending [.N.J.S.A. 17:32-15] to exclude special purpose obligations and assessments, the bill brings the law as it relates to retaliatory taxation of property and casualty insurers, into conformance with the treatment of retaliatory taxes imposed on foreign life insurers under [N.J.S.A.] 17B:23-5.”
In response to S. 1749, the New Jersey Acting Commissioner of Insurance wrote to the Chief Counsel of the Governor on Septem *94 ber 20, 1984 advising the Chief Counsel that the then Department of Insurance [2] intended to support the bill but would recommend certain amendments. One of those amendments was the deletion of the phrase “by another state” from the language quoted above. The letter further stated: “Eliminating ‘by another state’ clarifies the intent that any special purpose assessment, whether imposed by another jurisdiction or by New Jersey, not be considered in New Jersey retaliatory tax calculation. This would also strengthen the argument that a foreign jurisdiction in evaluating whether to impose its own retaliatory measures against New Jersey domestics only consider what New Jersey utilizes in its retaliatory statutes.” See Stryker Corp. v. Director, Div. of Taxation, 168 N.J. 138, 773 A.2d 674 (2001) (commenting that, “although documents contained in the files of the Counsel to the Governor relating to tax legislation have been held not to constitute legislative history, they do provide insights into the Executive Branch’s understanding of the law that are contemporaneous with the enactment of such legislation.” Id. at 161, 773 A.2d 674 (citation omitted).).
The Senate Revenue, Finance and Appropriations Committee apparently responded to the suggestion by the Department of Insurance by deleting the phrase “by another state” from S. 1749, and the Legislature enacted the bill as so amended. In the Statement accompanying the amended bill, the Committee included language similar to that contained in the Statement to the original bill relating to “conformance” of N.J.S.A. 17:32-5 with N.J.S.A, 17B:23-5. Seemingly through inadvertence, the Committee failed to modify the language of the Statement to take into account the amendment to S. 1749 which rendered inaccurate the Statement’s reference to N.J.S.A. 17B:23-5.
*95 Based on the preceding discussion, I conclude that legislative history does not support defendant’s position. The history demonstrates, however, that, in considering and enacting S. 1749, the Legislature not only was cognizant of N.J.S.A. 17B:23-5 but also recognized the significance to the calculation of retaliatory tax of the phrase “by another state.” The Legislature’s failure to make a simultaneous, or subsequent, deletion of this phrase from N.J.S.A. 17B:23-5 supports plaintiffs contention that this statute should be interpreted in accordance with its express provisions so that special purpose obligations and assessments imposed in another state are to be excluded in calculating retaliatory tax, and special purpose obligations and assessments imposed in New Jersey are to be included in the calculation.
A Florida retaliatory tax statute containing language almost identical to N.J.S.A. 17B:23-5b was construed in accordance with its express provisions in Florida Department of Revenue v. Liberty National Ins. Co., 667 So.2d 445 (Fla.Dist.Ct.App.1996). The statute provided for the exclusion from the tax calculation of “special purpose obligations or assessments imposed by another state in connection with particular kinds of insurance other than property insurance.” The Florida Department of Revenue argued that special purpose obligations and assessments imposed by Florida should also be excluded from the calculation for the years in issue, 1986 through 1990. In 1994, the statute was amended to delete the phrase “by another state.” Notwithstanding this intervening amendment, the Florida appellate court held that the statute, as in effect for the years under appeal, meant what it said, that is, only special purpose obligations and assessments imposed by a foreign state were to be excluded from the calculation of retaliatory tax, and those imposed by Florida were to be included. The court stated that the trial judge properly determined that the statute as in effect before the 1994 amendment “excludes special purpose obligations or assessments ‘imposed by other states’ from the computation of the retaliatory tax. The assessments paid by [Liberty] to the Florida Comprehensive Health Association are imposed by the State of Florida and not ‘[an]other state.’ Given a plain reading of the statute, these assessments are not excludable *96 under subsection 3 of the statute during the audit period in question.” Id. at 446.
In support of his argument based on administrative practice, defendant submitted the Certification of George Dytyniak, an executive assistant in the New Jersey Department of Banking and Insurance, where he has worked for twenty-five years. For the first twelve of those years, Mr. Dytyniak was directly involved in calculating retaliatory tax, and for the next thirteen years he was responsible for supervising the calculation of the tax, including calculations under N.J.S.A 17B:23-5. His Certification states in its entirety as follows with respect to the administrative interpretation of the statute:
4. The Department of Banking and Insurance, in conjunction with the Division of Taxation, has consistently interpreted N.J.S.A. 17B:23-5 to exclude special purpose obligations and assessments from both the New Jersey and foreign state sides of that balance.
Significantly, Mr. Dytyniak does not refer to any regulation, ruling or publication by the Division (for example, in State Tax News) or by the Department of Banking and Insurance which would notify taxpayers or the Legislature of the administrative interpretation of the statute. I infer that no public notice has at any time been provided of the Division’s or the Department’s interpretation. I cannot assume, therefore, that the Legislature was aware of, and has implicitly approved, the interpretation. Cf. Airwork Service Div. v. Director, Div. of Taxation, 97 N.J. 290, 478 A.2d 729 (1984) (stating that: “The generally limited usefulness of coupling administrative practice with legislative inaction to extrapolate legislative intent is further reduced when the agency attitude itself is unofficial and equivocal.” Id. at 295, 478 A.2d 729.). Consequently, I need not defer to the Division’s interpretation based on the absence of contravening legislative action.
The administrative interpretation of N.J.S.A. 17B:23-5 also is not entitled to deference from this court because it constitutes de facto rule-making without compliance with the requirements governing the promulgation of administrative rules contained in the Administrative Procedure Act, N.J.S.A 52:14B-1 to -15. In Metromedia Inc. v. Director, Division of Taxation, 97 N.J. 313, *97 478 A.2d 742 (1984), the Supreme Court held as follows with respect to the necessity for formal rule making:
[ Ajn agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appeal's that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the related or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future eases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past ageney position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
[Id. at 331-32, 478 A.2d 742.]
Under criteria (1), (2), (4), (5)(i), and (6), the long-standing administrative interpretation to which Mr. Dytyniak refers in his Certification required adoption of a rule when the interpretation was first implemented. Neither the Division nor the Department of Banking and Insurance has ever engaged in rule-making with respect to their interpretation of N.J.S.A. 17B:23-5. The passage of time does not confer validity on a defective administrative action. Consequently, defendant’s administrative interpretation is not entitled to enforcement by this court.
Even if rule-making was not required to implement defendant’s interpretation, I need not accept the interpretation when, as discussed above, it is contrary to the express provisions of N.J.S.A. 17B:23-5.
In determining a statute’s meaning we consider first the statutory language, for if the statute "is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than [its] literal terms to divine the Legislature’s intent.” Absent a legislative intent to the contrary, such language is to be given its ordinary meaning.
[GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 307, 625 A.2d 468 (1993) (citations omitted).]
True, courts have acknowledged that the practical administrative construction of a statute over a period of years without legislative interference will, under appropri *98 ate circumstances, be accorded great weight as evidence of its conformity with legislative intent. However, that long-continued error does not make valid what is clearly invalid is equally true.
[Id. at 313, 625 A.2d 468 (citations omitted).]
See also Employers’ Fire Ins. Co. v. Director, Div. of Taxation, supra, 6 N.J. Tax 613, stating: “Appellant’s argument that his interpretation of the act in administering it requires judicial deference must also be rejected. What is here involved is not the wisdom of an administrative action but whether that action is ‘statutorily authorized.’ ” Id. at 621 (citation omitted).
In summary, I conclude that the express language of N.J.S.A. 17B:23-5 supports plaintiffs interpretation of the statute. Defendant’s arguments based, on the purpose of the retaliatory tax, legislative history, and administrative practice do not demonstrate that the statute should be interpreted other than in accordance with its express provisions. At most, defendant’s arguments support the possibility of some ambiguity in the statute. Any such ambiguity must be resolved in favor of plaintiff. '
Two principles of statutory interpretation are relevant to ... analysis of ... [a] taxing statute. First, the court should follow the dear import of statutory language. Second, when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer.
[Fedders Financial Corp. v. Director, Div. of Taxation, 96 N.J. 376, 384-85, 476 A.2d 741 (citation omitted).]
Although I have rejected defendant’s interpretation of N.J.S.A. 17B:23-5, I decline to award to plaintiff counsel fees and costs pursuant to N.J.S.A. 54:51A-22(a). This statute permits a “prevailing taxpayer” seeking a refund in a court proceeding to receive an award of reasonable litigation costs provided that the taxpayer establishes that the position of the State “was without reasonable basis in fact or law.” N.J.S.A. 54:51A-22(e). In deciding whether to award litigation costs to plaintiff in the context of plaintiffs summary judgment motion, I must accept as true the statements contained in Mr. Dytyniak’s Certification that the administrative interpretation he describes has been in effect for many years. In addition, I must take into account that: (i) no previous reported decision has interpreted the retaliatory tax *99 statute in question with respect to the specific issue before me, (ii) plaintiff, in its initial filing of its required report, and in the first amendment to the report, did not seek the inclusion in the retaliatory tax calculation of the fraud prevention assessment or the individual health coverage program assessment, and (iii) although the language of N.J.S.A. 17B:23-5 differs from that of N.J.S.A. 17:32-15, defendant reasonably could have considered the Committee Statements discussed above in interpreting N.J.S.A. 17B:23-5.
Under all of these circumstances, I conclude that the plaintiff has failed to establish that defendant’s position was “without reasonable basis in fact or law,” and I reject plaintiffs application for litigation costs. Cf. Everest Reinsurance Co. v. Newark Div. of Tax Abatement, 18 N.J.Tax 50 (Tax 1998) (awarding litigation costs against the defendant under N.J.S.A. 54:51A-22 after finding that the defendant had “no basis in law or fact” for opposing the plaintiffs claim. Id. at 66).
Based on the preceding discussion, I conclude that no genuine issues as to any material facts exist and that, on the issue of the methodology for calculating retaliatory tax, plaintiff is entitled to summary judgment as a matter of law. See R. 4:46 — 2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). Accordingly, plaintiffs motion for summary judgment as to this issue is granted, and defendant’s motion for summary judgment is denied. As to the issue of litigation costs, plaintiffs motion for summary judgment is denied, and defendant’s motion for summary judgment is granted.

 Plaintiff's initial report calculated retaliatory tax based on: (a) payments in New Jersey of $2,299,693 in premium taxes, $4260 in agents and brokers license fees and $100 in filing fees, totaling $2,304,053, and (b) payments which would be required in Connecticut of $3,150,591 in premium taxes, $2130 in agents and brokers license fees, and $100 in filing fees, totaling $3,152,821. This resulted in a retaliatory tax liability of $848,768 ($3,152,821 minus $2,304,053). Plaintiff's second amended report added to its New Jersey payments $2,282,092 of assessments (consisting of the insurance fraud prevention assessment, the individual health coverage program assessment, the $68,847 assessment set forth in the first amended report, and a $54,741 New Jersey Life and Health Guaranty Fund assessment). Plaintiff acknowledges that the $54,741 assessment should not have been included, resulting in a claimed overpayment of $794,027. As described above, the Division agreed to grant plaintiff a credit of $68,847, leaving a claimed overpayment balance of $725,180.

 The Department of Banking and Insurance was "created and established" in 1891 and retained as a "principal department in the executive branch” in 1948. The department was divided into a Department of Banking and a Department of Insurance in 1970 and "recombined and designated as the Department of Banking and Insurance" in 1996. N.J.S.A. 17:1-1.