161 N.J. Super. 551 (1978)
391 A.2d 1289
DARRELL L. MC GHEE, AND LEE C. MC GHEE, PLAINTIFFS,
v.
CHARLEY'S OTHER BROTHER, A NEW JERSEY CORPORATION, JOHN DOE, ARCHITECT AND/OR ENGINEER, JOHN DOE, CONTRACTOR, STANLEY GOSIZK, T/A GOSIZK CORPORATION, INC. AND JOHN DOE, UNKNOWN DRIVER, DEFENDANTS. JURGEN MOZEE, PLAINTIFF,
v.
DARRELL L. MC GHEE, LEE C. MC GHEE AND CHARLEY'S OTHER BROTHER, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 31, 1978.
*552 Mr. Frederick R. Grayer for plaintiffs Darrell McGhee and Lee C. McGhee (Messrs. Kent, Grayer & Rosenberg, attorneys).
Mr. Thomas M. Masick for defendant Charley's Other Brother (Messrs. Parker, McCay & Criscuolo, attorneys).
Mr. Gerald R. Stockman for plaintiff Jurgen Mozee (Messrs. Stockman, Mancino, Marinari, Smithson & O'Donnell, attorneys).
*553 Mr. John E. Queenan, Jr. for defendant S. Gosizk.
Mr. Charles A. Delehey, for defendants Darrell McGhee and United Services Automobile Association (Messrs. Lenox, Giordano, Devlin, Delehey & Socey, attorneys).
HAINES, J.S.C.
This is a declaratory judgment action for construction of provisions contained in the uninsured motorist (UM) endorsement to an automobile liability policy.
Defendant United Services Automobile Association issued a liability policy to Lee C. McGhee covering his son Darrell L. McGhee for bodily injury in the amount of $50,000. N.J.S.A. 17:28-1.1 requires that every automobile policy covering a New Jersey motor vehicle must include coverage of $15,000 for bodily injury "for payment of all or part of the sums which the insured or his legal representatives shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile * * *." The UM endorsement under scrutiny in this action was issued in accordance with the statute. This endorsement provided insurance coverage for the McGhees and any occupants of the insured vehicle.
Plaintiff Jurgen Mozee was a passenger in the insured vehicle operated by Darrell L. McGhee. Plaintiff contends that an unidentified car emerged from a parking lot causing Darrell McGhee to swerve and collide with a tree. Plaintiff was injured very seriously. Following the accident defendant insurance company paid plaintiff $15,000 under the UM endorsement and plaintiff executed an "uninsured motorist release." The release simply discharged the company from claims arising under the UM coverage. It expressly provided that "nothing in this release shall be construed as modifying or discharging parties from their obligations under the Trust Agreement set forth in the policy." Subsequently, plaintiff instituted suit naming both McGhees and the owner of the parking lot as defendants.
*554 The Automobile Association is prepared to offer plaintiff the full amount of insurance coverage available in satisfaction of plaintiff's complaint. It contends that two distinct sections of the policy indicate that the amount due is $50,000 minus the $15,000 payment under the UM coverage. Plaintiff claims he is entitled to $50,000 plus the $15,000.
The Association relies, first, upon § III(d) of the uninsured motorist endorsement:
Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy.
Since the provision is an invention of the company, its validity must be considered in the light of the statutory language and intent. I reach the conclusion that the clause is not enforceable.
N.J.S.A. 17:28-1.1 states in part:
No automobile liability policy or renewal or such policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage, in limits for bodily injury or death as follows:
a. an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident * * *

* * * * * * * *
under provisions approved by the Commissioner of Insurance, for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile as defined in section 18 of chapter 174 of the laws of 1952 (C. 39:6-78), because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run automobile anywhere within the United States or Canada.
*555 Nothing in this statute authorizes the deduction claimed under § III.
Acceptance of the Association's argument would permit anomalous results, for example, assume the case of a passenger, covered by the UM provision, who obtains a judgment against the driver of his car for $3,000 and the driver of the uninsured vehicle for $5,000. The policy provision would reduce the $3,000 damage award by the $5,000 paid or payable under the UM coverage, resulting in a difference of less than zero. The victim, although determined to have suffered $8,000 in damages, would recover only $5,000, a result contrary to the intent of the statute, which is designed to make the victim whole. See Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974).
In Motor Club the Supreme Court held that the statutorily imposed obligation to provide UM coverage could not be modified through the insertion of an "other insurance" clause. This clause purported "to prohibit recovery on the UM coverage on the accident victim's own policy if he [had] recovered or [had] available recourse to the UM coverage of the vehicle he was occupying when injured (except to the extent of an excess in amount of coverage of the former over the latter)". Id. at 280.
In voiding this provision the Supreme Court applied two canons of statutory construction. First, a court should not "refuse to read the statute literally when such a reading will subserve the socially desirable policy of adequate indemnification of innocent automobile accident victims." Id. at 292. Second, an approach that assures "liberality in effecting the broadest protection of auto accident victims consistent with the language of the pertinent statute", id. at 293, is preferred. It also said that "the statute unambiguously grants the victim prima facie recourse to any and all [UM] policies applicable, subject to the unquestionably implicit condition that his claims in aggregate not exceed his damages." Id. at 292. The interpretation of the statute that best comports with these principles is one that requires an *556 insurer to supply uninsured motorist coverage in addition to and not in derogation of the basic liability coverage. Thus, it is neither permissible for an insurer to reduce the amount of uninsured motorist coverage by monies paid under the other bodily liability provisions of the policy nor to reduce the amount of the bodily liability coverage afforded its insured by monies paid under the uninsured motorist endorsement.
The Automobile Associations second and principal argument in support of its contention is based upon the Trust Agreement contained in the uninsured motorist endorsement. This agreement is as follows:

H. Trust Agreement
In the event of payment to any person under this insurance:
(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage because of which such payment is made;
(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;
(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;
(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.
The trust agreement, like the clause previously discussed, is designed to reduce the liability of the Association. Here, however, the Association has widened its sights and seeks to recover proceeds received from "any person or organization *557 legally responsible" for the harm resulting in its payment. This provision is void for the same reasons the damage clause, discussed above, is void.
In addition, an assignment of an unliquidated claim for personal injury is prohibited by the common law of most jurisdictions, see 40 A.L.R.2d 500, 502 (1955), including New Jersey, see, e.g., United States Cas. Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937). One commentator suggests that the provision at issue may have been denominated a "trust agreement" to avoid the impact of this very doctrine. See 2 Widiss, Uninsured Motorist Coverage, § 5.5, n. 12 (1969). The nationwide lobbying effort mounted by the insurance industry seeking enactment of legislation specifically allowing the right of recovery provided in the trust agreement, see id. § 3.10, underlines the continuing force of the common-law restriction. Some state legislatures have responded favorably. See id. New Jersey is not among them.
Other jurisdictions, in similar statutory but somewhat different factual settings, have wrestled with the problem of whether the trust agreement constitutes an invalid assignment. Compare Berlinski v. Ovellette, 164 Conn. 482, 325 A.2d 239 (Sup. 1973), with Granite State Insurance Co. v. Dundas, 34 Colo. App. 382, 528 P.2d 961 (App. 1974); Remsen v. Midway Liquors, Inc., 30 Ill. App.2d 132, 174 N.E.2d 7 (App. 1961). While New Jersey has no case law construing the trust agreement in question, our decisions concerning the assignment of personal injury claims are applicable.
One of the earliest cases, voiding such an assignment, is Weller & Lichtenstein v. Jersey City, Hoboken & Paterson Ry., 68 N.J. Eq. 659 (E. & A. 1905). Two attorneys entered into a written contract with a client, Meffert, to bring a negligence action against a railway company to recover damages for personal injuries. The contract provided that the attorneys were entitled to "50 per cent. of all he [Meffert] might recover from the respondent [railway company], *558 either by suit, settlement or otherwise * * *," and assigned to them "50 per cent. of any and all sums that may be so recovered therefor * * *." Id. at 660. Notice of the agreement was served upon the railway company, after which Meffert settled his claim but did not pay the attorneys. Meffert became insolvent and the attorneys sued the railway company to recover the amount to which they were entitled under their contract. They claimed that upon notification of their agreement a trust arose requiring the railway company to hold their share of the recovery for their benefit.
The court construed the agreement as not granting the attorneys any present interest in Meffert's cause of action. In its opinion the agreement was executory in nature, only entitling the attorneys to share in the proceeds of any recovery. Therefore, no trust could arise prior to the payment to Meffert. In the alternative, the court concluded that if the agreement was an attempted transfer of a present interest, it would not have been effective because "[a] right of action for personal injuries cannot be made the subject of assignment before judgment. In the absence of a statutory provision to the contrary," because "nothing is assignable * * * that does not directly or indirectly involve a right to property." Id. at 662.
A slightly different factual picture was presented in Goldfarb v. Reicher, 112 N.J.L. 413 (Sup. Ct.), aff'd 113 N.J.L. 399 (E. & A. 1934). Reicher has assigned to the Waphil Holding Corporation "`any and all sums of money which I may become entitled to after the trial, adjustment, compromise, or other disposition of' the action brought against the Starrett Company and Christie," id. at 414, to recover damages for an alleged tortious infliction of personal injuries. Subsequently, Reicher instituted an action against these parties and obtained a judgment in his favor. Later, Goldfarb obtained a judgment against Reicher and levied upon monies due Reicher under the judgment he had gotten against the Starrett Company and Christie. Waphil challenged *559 the validity of the levy, claiming priority by reason of its assignment.
The court held that the "attempted assignment of defendant's right of action, or of the monies to become due when the claim was reduced to judgment, was nugatory." Id. at 414. Nor could this assignment be ratified by the parties after a judgment had been obtained. Only the judgment itself, after it had been obtained, was capable of assignment.
The principle enunciated in these two opinions has been followed consistently in New Jersey. See United States Cas. Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937); Seaman v. Mann, 114 N.J. Eq. 408 (Cl. 1933). Most recently, this principle was reaffirmed in DiTolvo v. DiTolvo, 131 N.J. Super. 72, 79 (App. Div. 1974). Since the trust agreement transfers from Mozee to the Automobile Association a right to payment out of the proceeds of a settlement or judgment not yet received, it accomplishes exactly the same objective as contractual arrangements found to be void. No matter what label is appended to this agreement, its operative effect is not altered. See 6 Am. Jur.2d, Assignments, § 38 (1963). Therefore, the provision must be declared void because it contravenes the common law of this State.
The practical aspects of this case require comment. Counsel for the Association is concerned about the consequences of the settlement offer it intends to make the victim. Failure to offer the maximum compensation available under the policy may constitute bad faith, subjecting the Association to unlimited liability if damages are fixed in excess of that maximum. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474 (1974). My conclusion, in accordance with the above analysis, is that the Association has a policy limit in this case of $65,000.
Once the Association settles, and uses some or all of its UM monies for that purpose, the usual consequence attends: no claim against the victim survives. The UM coverage is *560 not to be treated differently from the basic bodily injury coverage in a settlement context. A recovery by the victim, in excess of damages fixed by some route other than settlement, does not affect this conclusion; it is not an unusual or unacceptable result in a negligence case.
This opinion is not intended to limit a right of legal subrogation otherwise available to the insurer. In New Jersey this is a right of equitable origin enforceable in a court of law. See, e.g., Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171-73 (1954); Camden Trust Co. v. Cramer, 136 N.J. Eq. 261 (E. & A. 1945). It is not a right created by contract, although it may be so limited or waived. Standard Accident Ins. Co. v. Pellecchia, supra 15 N.J. at 172. In A. & B. Auto Stores of Jones Street v. Newark, 59 N.J. 5 (1971), the Supreme Court explained:
Subrogation is an equitable doctrine to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. (citations omitted). When, as here, an insurance carrier which has satisfied a loss it was paid to cover, seeks to recoup by asserting a claim its insured has against another with respect to that loss, the final question must be whether justice would be furthered by that course. [at 23]
The facts before me do not require a determination as to whether the insurer is entitled to enforce a legal subrogation right or against whom such a claim may be brought.