659 So.2d 701 (1995)
Walter BEEBE, et al., Appellants/Cross-Appellees,
v.
AMERICAN AMBASSADOR CASUALTY COMPANY, Appellee/Cross-Appellant.
Nos. 94-959, 94-961.
District Court of Appeal of Florida, Fifth District.
August 18, 1995.
*702 Patricia K. Olney, Cocoa, for appellant/cross-appellee Walter M. Beebe.
Roy D. Wasson, Miami, and Stephen G. Charpentier of Childress & Charpentier, P.A., Melbourne, for appellant/cross-appellee Stacey L. Willits Beebe.
J.E. Bogos, Bret T. Jardine and William E. Hennen, of Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, for appellee/cross-appellant.
W. SHARP, Judge.
Stacey Willits Beebe and Walter Beebe appeal from a declaratory judgment which ruled that American Ambassador Casualty Company has no duty to indemnify Walter in a personal injury action filed against him by Stacey. American cross-appeals the additional holding in the judgment that American must provide Walter with a defense in the personal injury lawsuit filed against him by Stacey. We reverse the first determination, and affirm the second.
This case arose out of a two-car accident on May 17, 1989 that caused Stacey severe personal injuries. When the accident occurred, Stacey was a passenger in a car driven by Walter Beebe. The other car was driven by William Eisert, and that car was owned by Alma Griggs.
American was Walter's liability insurer. The policy provided limits of $10,000 for PIP, $10,000/$20,000 for uninsured motorist benefits, $7,500 for property damage, and $10,000/$20,000 for bodily injury (liability coverage). At the time of the accident, Stacey was not married to Walter. However, prior to filing a lawsuit to recover damages for the injuries she suffered in the accident, she and Walter were married.
On April 13, 1993, Stacey filed a lawsuit against Walter, Griggs, Eisert, and her own insurance carrier, State Farm. She settled with the insurers for Eisert and Griggs for their policy limits, and received uninsured motorist benefits from State Farm. Stacey also settled with American for the policy limits of its uninsured motorist benefits, reserving the question of whether she was entitled to liability benefits under Walter's policy.
On August 9, 1993, American brought this declaratory judgment action against the Beebes, claiming that its liability limits had been exhausted because of its $10,000 payment of uninsured benefits to Stacey. In this case, there is no dispute that any recovery by Stacey under the liability provisions of American's policy would not duplicate any recovery for damages she has already received, either under State Farm's policy or the insurers for Eisert and Griggs. Her damages were sufficiently severe that no duplication of benefits would result from a recovery of the full amount payable under the liability provisions of American's policy.
American relies on a provision in its policy which, in effect, sets off any amount paid to an injured person under its uninsured motorist coverage against the amount due under its liability coverage. The policy reads as follows:
PART I  LIABILITY TO OTHERS
LIMITS OF LIABILITY
Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the uninsured motorist coverage and/or medical payments coverage of this policy.
American also argues it had no duty to defend Walter because of the additional language in the policy which provides:
PART I  LIABILITY TO OTHERS *703 Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
The Beebes argue on appeal that the policy provisions are ambiguous and should be read to simply prohibit double recovery of damages. If there is any ambiguity, the construction of the insurance contract should be in their favor.[1] Finally, they argue that if the provision allowing the setoff is construed as American says it should be, it would violate the public policy of this state. These are matters of first impression in Florida.
It appears to us that the policy provision at issue in this case clearly provides that any amount of liability coverage payable will be reduced by the amount of uninsured motorist benefits already paid to that person. However, that makes the "claims status report" portion of the policy Walter contracted for inaccurate, if not misleading. Walter contracted for $10,000 per person uninsured motorist benefits and $10,000 per person bodily injury benefits under the liability coverage provisions. However, the liability coverage under this policy will always be less than that sum, if any uninsured motorist benefits are paid to the same person. Although not involved in this case, the liability benefits under the provision involved in this lawsuit would similarly be reduced if any PIP payments are made to the same person. Appellee's counsel suggested American's was simply a "cheap" policy, but at least it should be open and forthright about its cheapness.
In addition to being misleading, the provision in the American policy appears to us to violate the requirements of Florida's Financial Responsibility Laws as they have been designed by the Legislature for the protection of the general public. Clearly, if the setoff provision in American's policy were directed against uninsured motorist benefits so as to reduce them pro tanto as PIP or bodily injury, liability payments were made, there is little question such provisions would be found invalid. See Hartford Accident and Indemnity Co. v. Lackore, 408 So.2d 1040 (Fla. 1982); Warren v. Travelers Insurance Co., 650 So.2d 1082 (Fla. 1st DCA 1995); Divine v. Prudential Property & Casualty Insurance Co., 614 So.2d 683 (Fla. 5th DCA), rev. dismissed, 618 So.2d 1369 (Fla. 1993).
Section 627.727 provides as follows:
(1) No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state ... unless uninsured motor vehicle coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.
* * * * * *
The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any ... motor vehicle liability insurance coverage ... and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section. The amount of coverage available under this section shall not be reduced by a setoff against any coverage, including liability insurance.
The scheme or design of the Florida Statutes is to make uninsured motorist coverage excess over and above any benefits available under motor vehicle liability insurance coverage. The only allowable setoff or reduction under the statute is for duplicate benefits which would reimburse the insured for the same damages. Hartford Accident. If American's setoff provision were given effect, uninsured motorist coverage would become, in effect, the primary coverage. The policy could have (in effect) no motor vehicle liability coverage, if the payment for uninsured motorist were sufficiently high (as in this case).
We think a setoff provision, be it against uninsured motorist benefits for payments under the liability or PIP provisions, or against *704 the liability bodily injury provisions for uninsured motorist or PIP benefits are equally invalid and contrary to the public policy of this state. Only then can uninsured motorist coverage be "over and above" the coverage afforded by the liability coverage. This conclusion is supported by other jurisdictions where similar cases have been decided.
In McGhee v. Charley's Other Brother, 161 N.J. Super. 551, 391 A.2d 1289 (1978), affirmed sub nom. Mozee v. McGhee, 171 N.J. Super. 454, 410 A.2d 46 (1979), the New Jersey Superior Court invalidated a provision in the uninsured motorist portion of the insurance policy involved in that case which provided any uninsured motorist payments would be applied to reduce the amount that party could recover under the liability part of the policy. The court held that New Jersey's uninsured motorist statute (similar to Florida's) did not authorize this deduction:
The interpretation of the statute that best comports with these principles is one that requires an insurer to supply uninsured motorist coverage in addition to and not in derogation of the basic liability coverage. Thus, it is neither permissible for insurers to reduce the amount of uninsured motorist coverage by monies paid under the other bodily liability provisions of the policy nor to reduce the amount of the bodily liability coverage afforded its insured by monies paid under the uninsured motorist endorsement.
391 A.2d at 1291.
Similarly, in Johnson v. Jackson, 504 So.2d 88 (La.Ct. of App.), writ denied, 506 So.2d 1230 (La. 1987), the court held that a reduction clause in the uninsured motorist section of an automobile policy which provided payments under that section would reduce the amount the person was entitled to recover under the liability coverage of the policy violated Louisiana's public policy. The court noted that insurers may limit liability with unambiguous and clear provisions, and impose reasonable restrictions or conditions in their insurance contract so long as they do not conflict with the statute or public policy. As in this case, where the reduction clause reduced a plaintiff's entitlement to liability coverage to zero after payment of uninsured motorist benefits, the court held such a provision violated Louisiana's uninsured motorist statute:
Suppose the insurance contract in this case provided that UM coverage would be reduced by payments under the liability section, and a payment of $100,000 was made under the liability coverage. As a result, nothing would be due under the UM clause. It is clear, in light of the cited jurisprudence, that this reduction clause would be deemed invalid as violating public policy. Under our actual circumstances the result to the injured claimant is the same  he only received $100,000 under the insurance contract, after being penalized for accepting full payment under UM coverage for the negligence of the driver of the vehicle, other than the insured vehicle. If the claimant's UM recovery results in a reduction of other benefits, when the situation is viewed in its totality, the result is an infringement on the mandatory UM coverage. This contravenes public policy.
To summarize, it has been previously held that the reduction of UM coverage below that required by statute, by directing credit for payments from any source, is contrary to public policy. We think it logically follows that where the reduction of either limit, UM or liability, prevents the insured from receiving full benefit of the UM coverage to which he is entitled, that reduction clause is inconsistent with the mandatory coverage requirement of our UM statute.
504 So.2d at 92.
Accordingly, we reverse the declaratory judgment appealed in this case but affirm the trial court's ruling that American has a duty to defend Walter in the litigation brought against him by Stacey.
AFFIRMED in part, REVERSED in part.
PETERSON, C.J., and GOSHORN, J., concur.
NOTES
[1] Premier Insurance Company v. Adams, 632 So.2d 1054 (Fla. 5th DCA 1994); Hulse v. Blue Cross/Blue Shield of Florida, Inc., 424 So.2d 191 (Fla. 5th DCA 1983); Tropical Park, Inc. v. United States Fidelity and Guaranty Company, 357 So.2d 253 (Fla. 3d DCA 1978).