KUSKIN, J.T.C.
In these consolidated matters, plaintiffs American Fire and Casualty Company (American), an Ohio corporation, and West American Insurance Company (West American), an Indiana corporation, both authorized to conduct property and casualty insurance business in New Jersey, seek refunds of retaliatory tax assessed against them under N.J.S.A. 17:32-15.[1] They claim that defendant Director of the New Jersey Division of Taxation (Director) *160 improperly calculated their respective retaliatory tax obligations because, in comparing taxes paid by each of them in New Jersey with the taxes a New Jersey insurer would be required to pay in Ohio or Indiana, the Director took into account the provisions of N.J.S.A. 54:18A-6. This statute provides that, if a domestic or foreign non-life insurance company doing business in New Jersey collects taxable premiums in New Jersey exceeding 12.5% of the total premiums “collected by the company and all of its affiliates during the same year on all policies and contracts of insurance whenever and wherever issued, the taxable premiums of such company shall not exceed a sum equal to twelve and one-half percentum (12½%) of such company’s total premiums collected during the same year on all policies and contracts of insurance, whenever and wherever issued ____” Plaintiffs assert that, for purposes of computing retaliatory tax, the Director should disregard the 12.5% cap and make the computation as if each of them had paid tax on all premiums collected in New Jersey.
The parties have submitted a Stipulation of Facts, and plaintiffs and the Director have moved for summary judgment. For the reasons set forth below, I grant defendant’s motions and deny plaintiffs’ motions.
For the tax years in issue, 1999 as to American and 1997 as to West American, plaintiffs filed insurance premium tax returns using forms provided by the Director. These forms did not provide for calculation of premium tax liability based on the 12.5% cap provided in N.J.S.A. 54:18A-6. In its initial 1999 tax return, American calculated a total tax obligation of $268,767 (without applying the cap), including $14,405 of retaliatory tax. In an amended return, American calculated a reduced premium tax liability, the same retaliatory tax liability, and claimed a refund of $27,606. In May 2001, the New Jersey Department of Banking and Insurance certified to the Director that American had collected approximately 15.9% of its total premiums in New Jersey and, therefore, qualified for the 12.5% cap. The certification included a statement that American incorrectly calculated retaliatory tax because “12.5% is only on NJ side and should be compared to domicile calculation.” Based on this certification, the Director *161 determined that retaliatory tax of $27,606 was due and, on July 21, 2001, issued his final determination denying American’s claim for refund. This appeal ensued.
The initial tax return filed by West American for tax year 1997 showed a tax obligation of $512,780 (calculated without applying the cap), with no retaliatory tax due. An amended return reflected a refund claim of $127,406 and no obligation for retaliatory tax. In May 2001, the Department of Banking and Insurance certified that West American had collected approximately 13.3% of its total premiums in New Jersey, and, therefore, the 12.5% cap applied. The certification stated that West American incorrectly calculated its retaliatory tax obligation because “12.5% is only on NJ side and should be compared to domicile calculation.” Based on the certification, the Director determined that West American was entitled to a refund of $108,583, owed retaliatory tax of $18,823, and, therefore was not entitled to the $18,823 balance of the claimed refund. The Director issued his final determination to this effect on July 12, 2001, and this appeal ensued.
Under N.J.S.A. 17:32-15, retaliatory tax is calculated by comparing the tax obligations of a foreign insurer doing business in New Jersey with the tax obligations that would be imposed by the insurer’s home state on a New Jersey insurance company doing the same amount of business in that state. The statute provides as follows:
When by the laws of any other state ... any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon New Jersey insurance companies ... doing business in such other state ... which are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon insurance companies ... of such other state ... doing business in New Jersey, ... so long as such laws continue in force the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon insurance companies ... of such other state ... doing business in New Jersey____
In his determination of retaliatory tax due from American and West American, the Director compared the “taxes, fees, fines, penalties, licenses, deposit requirements or other obligations” due from each of them in New Jersey, after application of the 12.5% *162 cap under N.J.S.A. 54.18A-6, with the “taxes, fees, fines, penalties, licenses, deposit requirements or other obligations” that would be imposed by Ohio and Indiana on a New Jersey insurer collecting premium revenue in each of those states equal to the revenue collected by American and West American, respectively, in New Jersey. This was the Director’s standard methodology for calculating retaliatory tax, although not embodied in regulations or a written statement of internal policies. In Employers’ Fire Insurance Co. v. Director, Division of Taxation, 6 N.J.Tax 613 (App. Div.1984), the Appellate Division noted that the Director determines retaliatory tax obligations by applying “the aggregate of financial exactions required of insurance companies by New Jersey and [measuring] the total against the aggregate of the same burdens imposed by a sister state upon our corporations doing business in that state.” Id. at 618. The court did not rule on whether this so-called “aggregate method of calculation” is required or permitted under the retaliatory tax statute, N.J.S.A. 17:32-15, but commented that the “aggregate method appears to be the manner by which most states calculate retaliatory taxes.” Id. at 619. Without ruling on the issue, Aetna Insurance Co. v. Director, Division of Taxation, 20 N.J.Tax 87, 90 (Tax 2002), recognized the aggregate method of calculating retaliatory tax.
Plaintiffs contend that the 12.5% cap statute, N.J.S.A. 54.T8A-6, and the retaliatory tax statute, N.J.S.A. 17:32-15, should be analyzed together, in pari materia, because both are parts of a single statutory scheme relating to the taxation of property and casualty insurance companies. Plaintiffs assert that, when the statutes are so viewed, the Director’s calculation of retaliatory tax reflects an incorrect interpretation of the relationship between the statutes, an interpretation which is inconsistent with the purpose of, and policy considerations relating to, both statutes. Plaintiffs further claim that the Director’s methodology renders the retaliatory tax statute unconstitutional as applied, because the methodology denies plaintiffs equal protection. The Director responds that each of the statutes serves a purpose separate and distinct from the other, that neither refers to the other, and, accordingly, each should be interpreted and applied separately and the constitution *163 ality of each should be determined separately. The Director asserts that applying the 12.5% cap in the retaliatory tax computation is appropriate and consistent with the proper functioning and intent of the two statutes.
The parties agree that, based on legislative history, the purpose of the cap statute was to encourage domestic and foreign insurance companies to expand their operations in New Jersey and thereby contribute to the State’s economy. The parties also agree that the purpose of the retaliatory tax was articulated accurately by the United States Supreme Court as follows:
Although variously expressed, the principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other states from enacting discriminatory or excessive taxes.
... Since the amount of revenue raised by the retaliatory tax is relatively modest, and the impetus for passage of the tax comes from the nationwide insurance industry, it is clear that the purpose is not to generate revenue at the expense of out-of-state insurers, but to apply pressure on other States to maintain low taxes on [domestic] insurers.
[Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 668-70, 101 S.Ct. 2070, 2083-84, 68 L.Ed.2d 514, 531 (1981) (citations omitted).]
A similar statement of statutory purpose was set forth by the Appellate Division in Employers’ Fire Insurance Co. v. Director, Division of Taxation, supra, 6 N.J.Tax 613:
Retaliatory tax laws are a fact of life in the existence of any insurance company that does business on a national level____Although such statutes may incidentally produce revenue, the primary purpose sought to be achieved is to compel the foreign state imposing greater costs to lower the “premium or income or other taxes, ... fees, fines, penalties, licenses, deposit requirements or other obligations,” or to remove any “prohibitions or restrictions ... imposed upon” the insurance companies of the domiciliary state.
[Id. at 615-16 (citations omitted).]
The retaliatory tax causes an insurance company doing business in a foreign state to pay higher tax obligations in that state than a domestic insurance company which generates the same amount of premium revenue in the state. Notwithstanding this apparent discrimination, the constitutionality of the retaliatory tax under the Equal Protection Clause of the United States Constitution was sustained in Western & Southern Life Insurance Co. v. State *164 Board, of Equalization, supra, based on the statutory purpose quoted above.
We consider it now established that, whatever the extent of a State’s authority to exclude foreign corporations from doing business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose.
[451 U.S. at 667-68, 101 S.Ct. at 2083, 68 L.Ed.2d at 530.]
There can be no doubt that promotion of domestic industry by deterring barriers to interstate commerce is a legitimate state purpose.
The mere fact that California seeks to promote its insurance industry by influencing the policies of other states does not render the purpose illegitimate.
Having established that the purpose of California’s lawmakers in enacting the retaliatory tax was legitimate, we turn now to the second element in our analysis: whether it was reasonable for California’s lawmakers to believe that use of the challenged classification would promote that purpose____ [W]hether in fact the provision will accomplish its objectives is not the question: The Equal Protection Clause is satisfied if we conclude that the California Legislature rationally could have believed that the retaliatory tax would promote its objective.
We cannot say that the California Legislature’s conclusions were irrational, or even unreasonable. Assuming that the lawmakers of each state are motivated in part by a desire to promote the interests of their domestic insurance industry, it is reasonable to suppose that California’s retaliatory tax will induce other States to lower the burdens on California insurers in order to spare their domestic insurers the cost of the retaliatory tax in California.
[Western & Southern Life Insurance Co. v. State Bd. of Equalization, supra, 451 U.S. at 671-72, 101 S.Ct. at 2084-85, 68 L.Ed.2d at 532-33 (citations omitted).]
Plaintiffs assert that, when retaliatory tax is calculated by including in the New Jersey portion of the calculation the cap on taxable insurance premiums set forth in N.J.S.A. 54:18A-6, the tax does not serve the purpose which was the basis for the Western & Southern equal protection ruling. Plaintiffs argue that, in so calculating retaliatory tax, New Jersey does not seek to encourage sister states to impose a cap similar to that contained in N.J.S.A. 54:18A-6, because to do so would undermine New Jersey’s tax advantage resulting from the cap and defeat the business-inducing purpose of the cap. Thus, according to plaintiffs, as calculated by the Director, the retaliatory tax functions as a revenue measure not permitted by the Equal Protection Clause.
*165 Plaintiffs contend that the unconstitutionality of the retaliatory tax, as applied by the Director, requires that the retaliatory tax and cap statutes be interpreted so as to avoid a constitutional problem. See Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472, 478, 126 A.2d 340 (1956) (stating that “where there are two possible interpretations of a statute or ordinance, by one of which the law would be unconstitutional and by the other it would be valid, a court should adopt the construction which will uphold the law.”). I will address plaintiffs’ constitutional arguments after determining the proper interpretation of the two statutes without regard to constitutional issues.
In interpreting a statute, a court’s objective is to effectuate legislative intent. The primary indicators of this intent are the express words of the statute and direct legislative history in the form of committee statements and hearing transcripts. In the absence of either clear and unequivocal statutory language or informative legislative history, and, indeed, even when relying on those materials, a court may employ accepted maxims or rules of statutory construction, not as determinants of meaning, but as guideposts for ascertaining legislative intent. In Stryker Corp. v. Director, Division of Taxation, 168 N.J. 138, 773 A.2d 674 (2001), our Supreme Court held that all maxims of statutory construction are relevant in interpreting tax statutes but also held that a rule of construction “must be subordinated to the paramount purpose of construing a statute to ascertain the legislative intent.” Id. at 157, 773 A.2d 674 (quoting Salomon v. Jersey City, 12 N.J. 379, 389, 97 A.2d 405 (1953)). See also Koch v. Director, Division of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999) (“Finally, ‘whatever be the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment read in full light of its history, purpose and context.’ ”). Neither N.J.S.A. 54:18A-6 nor N.J.S.A. 17:32-15 provides any express guidance as to its relationship to the other statute, nor does direct legislative history resolve the issue of how these two statutes relate to and function with each other. Under these circumstances, a court must infer legislative intent. The history *166 of the statutes and applicable rules of statutory construction provide bases for this inference.
The history of the cap and retaliatory tax statutes suggests that neither statute should affect the interpretation of the other. The Legislature enacted the cap statute in 1945, L. 1945, c. 132, § 6, and the retaliatory tax statute in 1950, L. 1950, c. 231, § 1. The cap statute was amended in 1985, L. 1985, c. 294, § 1, and in 1989, L. 1989, c. 315, § 1, and the retaliatory tax statute was amended in 1985, L. 1985, c. 88, § 1. The Legislature is presumed to be aware of existing legislation when it enacts a statute. Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818 (1985). Thus, the Legislature is presumed to have been aware of the cap statute when it enacted the retaliatory tax and is presumed to have been aware of the other statute when amending either the cap or retaliatory tax statute. The retaliatory tax statute, as initially enacted, did not refer to the cap statute, and no amendment to either statute referred to the other.
As reflected in a memorandum dated April 22, 1985 from the then Commissioner of Insurance, Hazel F. Gluck, to the Chief of Staff and Counsel to the Governor, the insurance industry participated in the discussions culminating in the 1985 amendment to the cap statute. This amendment was particularly significant to the insurance industry because it required an insurance company to include premium revenues of all affiliates in determining whether the company’s New Jersey premium revenue exceeded 12.5% of total premium revenue. Before the amendment, insurance companies had formed New Jersey subsidiaries and calculated eligibility for the cap based on the revenues of the subsidiary only. The memorandum describes suggestions by domestic insurance companies as to amending the cap statute and their objections to amendments proposed by other companies, but does not mention the policy of the cap or retaliatory tax, or any potential conflict between the two statutes. This type of participation by the insurance industry in legislative and regulatory processes apparently is not unusual. See McGhee v. Charley’s Other Brother, 161 N.J.Super. 551, 557, 391 A.2d 1289 (Law Div.1978) (describing a “nationwide lobbying effort mounted by the insurance industry” *167 seeking enactment of certain legislation) and Susan Randall, Insurance Regulation in the United States: Regulatory Federalism and the National Association of Insurance Commissioners, 26 Fla. St. U.L.Rev. 625, 674 (1999) (commenting that the likely primary explanation for the insurance industry’s preference for state, rather than federal, regulation is the industry’s “ability to influence and even to control state regulators”).
The failure of the Legislature, in enacting the retaliatory tax statute and in amending it and the cap statute, to address the conflict between the statutes asserted by plaintiffs, and the omission of any discussion of the issue in the Gluck Memorandum, in combination suggest a legislative intent to have the cap statute and retaliatory tax statute function in the manner adopted by the Director. See Mahwah Tp. v. Bergen County Bd. of Taxation, supra, 98 N.J. 268, 281, 486 A.2d 818 (relying on the failure by the Legislature to refer to the other of two related statutes, while amending one of them, as evidencing legislative intent that both of the statutes should continue in effect) and Data Access Sys., Inc. v. State, 63 N.J. 158, 166-67, 305 A.2d 427 (1973) (permitting consideration of “materials which may never have met the legislative eye,” id. at 167, 305 A.2d 427, in interpreting statutes). That the insurance industry’s lobbying propensities and powers, as described in the preceding paragraph, have not resulted in an express legislative response to plaintiffs’ concerns, provides some implicit support for (but does not provide the basis for) my conclusion as to legislative intent.[2]
A conclusion similar to that indicated by the history of the cap and retaliatory tax statutes results from application of the rule of statutory construction that implied repealers are not favored. This rule is relevant because plaintiffs, in effect, contend that enactment of the retaliatory tax effected an implied partial repeal of N.J.S.A. 54:18A-6 so that its cap provisions would not apply in calculating retaliatory tax.
*168 A repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt. Every reasonable construction should be applied to avoid a finding of implied repealer. There is a strong presumption in the law against implied repealers.
[Mahwah Tp. v. Bergen County Bd of Taxation, supra, 98 N.J. at 280-81, 486 A.2d 818 (citations omitted).]
An implied repealer can occur only if the provisions of two statutes are repugnant to each other.
When a subsequent enactment covering a field of operation coexistent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict.
Conversely, if the inconsistency between a later act and an earlier one is not fatal to the operation of either, the two may stand together and no repeal will be effected.
[Kemp v. State, 147 N.J. 294, 307, 687 A.2d 715 (1997) (quoting 1A Norman J. Singer, Sutherland Statutory Construction § 23.09 (5th ed.1993)).]
Under the preceding authorities, plaintiffs’ contention that the cap should be disregarded in calculating retaliatory tax can prevail only if there is “irreconcilable conflict” between the two provisions. I conclude that there is not. In reaching this conclusion, I regard the two statutes as in pan materia because they relate to the same subject matter. See National Lead Co. v. Sayreville Bor., 132 N.J.Super. 30, 37, 331 A.2d 633 (App.Div.1975) (holding a statute relating to taxation of real property in pari materia with a statute relating to taxation of business personal property because the statutes “form part of a comprehensive plan of taxation of real and personal property.”) See also Dvorkin v. Dover Tp., 29 N.J. 303, 316, 148 A.2d 793 (1959) (“It has been held that statutes forming a portion of a comprehensive plan for assessment, levying and collection of realty taxes are in pari materia and must be read together.”)
A comparison of eases interpreting statutes alleged to be in conflict demonstrates that the cap and retaliatory tax do not fall into that category. In Kemp, supra, 147 N.J. 294, 687 A.2d 715, our Supreme Court found that a grant of immunity contained in the Tort Claims Act (TCA) was “clearly inconsistent” with a qualified immunity granted under N.J.S.A. 26:11-12. Kemp, supra, 147 N.J. at 308, 687 A.2d 715.
*169 Thus, under N.J.S.A. 26:11-12, a public entity that performs a ministerial act in good faith, even negligently, would be immune from liability. Under the TCA’s general rule, however, an entity that acts negligently in the performance of a ministerial duty is not immune from liability, regardless of good faith. We conclude that N.J.S.A. 26:11-12 is inconsistent with the TCA treatment of ministerial acts.
[Id. at 308-309, 687 A.2d 715.]
Based on this analysis, the Court concluded that the Legislature did not intend that immunity from liability should depend on good faith and held that the general grant of good faith immunity in N.J.S.A. 26:11-12 was “irreconcilably inconsistent” with the TCA and was impliedly repealed by the TCA.
By contrast, in Mahwah Township v. Bergen County Board of Taxation, supra, 98 N.J. 268, 486 A.2d 818, the Court held that the enactment of statutes requiring the State of New Jersey to make payments in lieu of taxes with respect to state facilities located in a municipality did not impliedly repeal an earlier statute mandating a rebate of a portion of a municipality’s share of county taxes if the municipality had within its borders two hundred acres or more of land used and occupied “by a state or county institution.”
That the in-lieu payments statute does not contain an express repealer of the rebate statute, that the rebate statute has been amended by the Legislature twice since the in-lieu payments act became effective, and that the state property provisions were never omitted from the rebate act by the Legislature, all evidence the Legislature’s intention that the two statutes should co-exist.
[Id. at 281, 486 A.2d 818.]
In Yacenda Food Management Carp. v. New Jersey Highway Authority, 203 N.J.Super. 264, 496 A.2d 733 (App.Div.1985), the court construed two statutes relating to restaurant leases entered into by the Highway Authority. The statute enacted earlier in time authorized the Authority to contract for the use of its property as a restaurant without specifying any bidding obligation. The later statute required bidding for any contract involving an Authority expenditure in excess of $2500.
The question presented here is whether the subsequent enactment of the bidding statute altered the NJHA’s power to negotiate such contracts.
The answer, we have concluded, is that it did not. In construing statutes a court must assume that the Legislature is thoroughly conversant with its own enactments and with the judicial construction placed on them. In the context of this *170 case, it is assumed then, that the Legislature knew of the provisions of N.J.S.A. 27:12B-14 at the time it enacted the bid statute in 1969, and that it was also aware of the language of the Supreme Court in [Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 177 A.2d 752 (1962) ] which laid to rest any doubt as to the power of NJHA to negotiate contracts for restaurant services on the Parkway. In the face of this presumed knowledge it is telling to us that the Legislature made no effort to use language in the bid statute which would expressly require bidding in the restaurant services situation.
[Id. at 272-73, 496 A.2d 733 (citation omitted).]
The Appellate Division held that the bid statute did not impliedly repeal the powers of the Highway Authority to negotiate contracts without bidding. “The doctrine of implied repeal is disfavored in our law unless the later expression of the legislative will is so clearly in conflict with the earlier statute that the two cannot reasonably stand together. The test is whether the laws are inconsistent or repugnant.” Id. at 274, 496 A.2d 733.
The cap statute, N.J.S.A. 54:18A-6, applies to domestic and foreign insurance companies. The retaliatory tax statute, N.J.S.A. 17:32-15, applies only to foreign companies but is part of a national legislative scheme in which each of forty-nine states (Hawaii has no retaliatory tax) attempt to influence all other states to reduce insurance company taxation. The retaliatory tax statute can fulfill this function even if the 12.5% cap is included in the calculation of the tax. For example, if a foreign insurance company collects $1000 of premiums in New Jersey, and has total premium revenues of $4000, its premium tax obligation in New Jersey (disregarding all fees, fines, licenses, deposit requirements, or other obligations that New Jersey might impose), after applying the 12.5% cap, would be $10.50 (the premium tax rate in New Jersey for non-life insurance companies is 2.1% of taxable premiums collected in this State; (12.5% x $4000) x 2.1% = $10.50). The foreign insurer also would be liable for retaliatory tax in an amount dependent on the amount of taxes the foreign insurer’s home state would impose on a New Jersey insurer collecting $1,000 of premiums in that state. The lower the foreign state’s taxes are, the lower will be the retaliatory tax burden on the foreign insurer in New Jersey even if the cap is included in the retaliatory tax computation. If the foreign state’s premium tax rate is 2.1% (the same rate as New Jersey), then the foreign *171 insurer would pay $10.50 of retaliatory tax and total taxes of $21. But, if the premium tax rate in the foreign insurer’s domicile is 1.8% (the rate applicable in Indiana in 2002, National Association of Insurance Commissioners, Compendium of State Laws on Insurance Topics TX-10-3 (Feb 2003)), the company would pay retaliatory tax of $7.50 ((1.8% x $1000) — $10.50 = $7.50) and total taxes of $18.
The preceding example demonstrates that retaliatory tax as calculated by the Director (with the 12.5% cap included in the calculation) can function to encourage other states to lower their tax burdens on New Jersey insurers doing business in those states. Even though the tax significantly reduces the benefits of the cap to foreign insurers, the tax continues to operate as contemplated and described in Western & Southern, supra, 451 U.S. 648, 101 S.Ct., 2070, 68 L.Ed.2d 514 and in Employers’ Fire Insurance Co. v. Director, Division of Taxation, supra, 6 N.J.Tax 613. Consequently, N.J.S.A. 54:18A-6 and N.J.S.A. 17:32-15 are neither repugnant to each other nor in irreconcilable conflict, and there is no “clear and compelling evidence,” Mahwah Tp. v. Bergen County Bd. of Taxation, supra, 98 N.J. at 280, 486 A.2d 818, that, in enacting the latter statute, the Legislature intended to partially repeal the former statute by rendering the 12.5% cap inapplicable in calculating retaliatory tax.
As set forth above, plaintiffs contend that this interpretation of the two statutes (i) represents bad policy, (ii) defeats the purpose of the cap statute to induce foreign insurance companies to do increased business in New Jersey, and (iii) does not fulfill the purpose of the retaliatory tax. In support of these arguments, plaintiffs submitted certifications from two experts in the insurance industry who discussed policy considerations but not statutory interpretation. One expert, although acknowledging that “[a]s a tax economist, I am not in a position to assess constitutional or statutory questions,” stated: “What good is a tax preference as an economic incentive if its application, conditions, and tax saving value are stealthily terminated under the guise of retaliatory taxation? It is bad economics and bad economic development policy.” Plaintiffs’ other expert, who, among his other qualifica *172 tions, had served as an insurance industry regulator in Virginia and New York and as chief counsel to a major insurance company, opined as follows:
The [Division of Taxation’s] recapturing of the cap [through the mechanism of the retaliatory tax] is inconsistent with the normative goals of the retaliatory tax and seems justified only by revenue considerations. The Division takes away from only foreign companies tax benefits that have been expressly conferred by the New Jersey Legislature for purposes having nothing to do with the retaliatory tax. I believe that the Division’s position is contrary to sound public policy.”
Plaintiffs’ policy arguments and the analyses by their experts are logical, sensible, and appealing. However, my responsibility is not to interpret the cap and retaliatory tax statutes based on my notions of appropriate policy, but to interpret the statutes based on my analysis of legislative intent. “The judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge’s private view of what is just or sensible.” Village of Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 431, 157 A.2d 829 (1960). See also White v. North Bergen Tp., 77 N.J. 538, 554, 391 A.2d 911 (1978) (“It goes without saying that the wisdom, good sense and prudence (or otherwise) of a statute are matters within the province of the Legislature and not of the Court.”). If the Legislature has made a bad policy judgment in requiring that the cap be applied in calculating retaliatory tax, that is the Legislature’s prerogative, as it is the Legislature’s prerogative to amend the cap and retaliatory tax statutes if it wishes. Plaintiffs’ arguments may convince the Legislature that an amendment is appropriate. However, I find no indication that the Legislature intended the cap and the retaliatory tax statutes, as now in effect, to function in the manner plaintiffs assert.
Plaintiffs’ position is not aided by Fedders Financial Corporation v. Director, Division of Taxation, 96 N.J. 376, 476 A.2d 741 (1984), where our Supreme Court, relying on a decision of the United States Supreme Court, stated that “when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer.” Id. at 385, 476 A.2d 741. Closer examination of the Court’s language reveals that the instruction to resolve *173 doubt in favor of the taxpayer relates to a situation involving the extension or enlargement of a tax statute to apply “beyond the clear import of the language used.” Ibid. The Court distinguished this situation from a claim of exemption:
When the statutory language is unclear and the legislative history is wanting, the doubt referred to in [Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917) ] exists and its principle is applicable. This situation is to be distinguished from the one in which the taxpayer seeks an exemption from a taxing statute. The probable legislative intent is one of inclusion and exemptions are to be construed narrowly.
[Id. at 386, 476 A.2d 741.]
See KSS Transportation Corp. v. Director, Division of Taxation, 11 N.J.Tax 89, 93 (App.Div.1989) (describing Fedders as articulating a presumption that the statutory intent is one of inclusion as to exemption claims).
The relief sought by plaintiffs is analogous to an exemption — a reduction in plaintiffs’ respective retaliatory tax liability by exempting each of them from the payment of retaliatory tax equal to the difference between the tax payable under the cap and the tax impositions imposed by their respective domiciles. If plaintiffs were to prevail, the Director would have to treat foreign insurers as if they had paid premium tax in New Jersey at a 2.1% tax rate while they may have paid tax at an effective rate significantly lower than 2.1%.[3] This would result in each plaintiffs paying lower taxes in New Jersey than the taxes payable by a New Jersey insurer collecting equivalent premiums in Ohio or Indiana. Such a result would be contrary to the purpose and proper operation of the retaliatory tax.
Plaintiffs assert that their interpretation of the cap and retaliatory tax statutes is consistent with the Director’s practice of calculating retaliatory tax by not reducing premium tax paid to *174 New Jersey by the amounts of certain credits against premium tax available to foreign (and domestic) insurance companies. These credits relate to items actually paid in New Jersey such as payments to the New Jersey State Firemen’s Association, N.J.S.A. 54:18-1 (the credit is expressly authorized by N.J.S.A. 54:18A-2(a)), and assessments paid to the Life and Health Insurance Guaranty Association under N.J.S.A. 17B:32A-8 (the credit is expressly authorized by N.J.S.A. 17B-32A-18a). Plaintiffs’ argument is without merit. Under plaintiffs’ interpretation of N.J.S.A. 54:18A-6 and N.J.S.A. 17:32-5, plaintiffs would be relieved of retaliatory tax obligations without having made compensating payments to New Jersey or to a fund in New Jersey established by statute.
Because I have interpreted N.J.S.A. 54:18A-6 and 17:32-15 contrary to plaintiffs’ position, I must now address their constitutional arguments. The test to be applied in determining the constitutionality of these statutes is the rational basis test.
The Equal Protection Clause does not forbid classifications ... [T]his Court’s cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently support characteristic, the Equal Protection clause requires only that the classification rationally further a legitimate state interest.
[Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 13 (1992) (citations omitted).]
“Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes.” Regan v. Taxation with Representation, 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129, 138 (1983). See also Western & Southern, supra, 451 U.S. at 671-72, 101 S.Ct. at 2084-85, 68 L.Ed.2d at 533.
Plaintiffs assert that the Director’s calculation of retaliatory tax results in a preference for domestic insurers analogous to the preference resulting from the taxing scheme at issue before the United States Supreme Court in Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). There, the State of Alabama imposed a higher premium tax rate on foreign insurance companies than it imposed on domestic companies. The foreign insurance companies could reduce, but not eliminate, the disparity by investing in assets in Alabama. *175 The Court distinguished these facts from Western & Southern and held that the Alabama taxing scheme did not satisfy the rational basis test and violated the Equal Protection Clause.
In Western, & Southern, ... we held that California’s purpose in enacting the retaliatory tax — to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes — was a legitimate one. In contrast, Alabama asks us to approve its purpose of promoting its business of domestic insurers in Alabama by penalizing foreign insurers who also want to do business in the State. Alabama has made no attempt, as California did, to influence the policies of other states in order to enhance its domestic companies’ ability to operate interstate; rather, it has erected barriers to foreign companies who wish to do interstate business in order to improve its domestic insurers’ ability to compete at home.
[Id. 470 U.S. at 876-78, 105 S.Ct. at 1681, 84 L.Ed.2d at 758-59 (citation omitted).]
I conclude that the Metropolitan Life holding and analysis are not applicable here. In applying the rational basis test to the cap and retaliatory tax statutes, a critical element of the analysis is the precise rational basis which rendered the retaliatory tax constitutional.[4] In Western & Southern the Supreme Court sustained the constitutionality of the retaliatory tax not because the tax was intended to encourage other states to impose tax burdens equal to that imposed by an insurance company’s home state, but because it served the purpose of “deterring other states from enacting discriminatory or excessive taxes.” Western & Southern, supra, 451 U.S. at 668, 101 S.Ct. at 2083, 68 L.Ed.2d at 531. As discussed above, New Jersey’s retaliatory tax, when calculated by applying the 12.5% cap, can accomplish this objective, and, therefore, satisfies both elements of the rational basis test — the tax serves a legitimate state purpose (influencing the tax burden imposed by *176 foreign states on New Jersey insurers), and the Legislature reasonably could have believed that the tax, as so calculated, could achieve this purpose.
Whether or not the statutory scheme actually has, or has had, the desired effect is not the issue. “But whether in fact the provision will accomplish its objectives is not the question: The Equal Protection Clause is satisfied if we conclude that the [state] legislature rationally could have believed that the retaliatory tax would promote its objective.” Western & Southern, supra, 451 U.S. at 671-72, 101 S.Ct. at 2085, 68 L.Ed.2d at 533. See also Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 270-71 (1993), in which the Court stated:
[A] classification “must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. “[A] legislative choice is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidencevr empirical data.”
[citations omitted].
See also FCC v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211, 222 (1993) (“Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.” (citations omitted)). In Greenberg v. Kimmelman, 99 N.J. 552, 494 A.2d 294 (1985), our Supreme Court adopted a similar “rational basis” test, under the New Jersey Constitution when a fundamental right is not at issue. Id. at 573-74, 494 A.2d 294. Accord New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners, 48 N.J. 581, 601, 227 A.2d 313 (1967) and Acuna v. Turkish, 354 N.J.Super. 500, 512, 808 A.2d 149 (App.Div.2002).
Based on the preceding discussion, I conclude that, if the retaliatory tax and 12.5% cap statutes are viewed in pari materia, both statutes are constitutional. As a result, plaintiffs’ constitutional arguments do not necessitate any modification of my interpretation of the relationship between the two statutes.
*177 The Director has properly calculated plaintiffs’ respective retaliatory tax obligations. Consequently, the Director’s motions for summary judgment denying plaintiffs’ claims for refunds are granted, and plaintiffs’ motions for summary judgment are denied.

 Plaintiffs and entities related to plaintiffs have filed the following similar appeals: American Fire and Casualty Co. v. Director, Division of Taxation, Docket Nos. 002366-2001 and 004721-2001; West American Insurance Co. v. Director, Division of Taxation, Docket No. 002365-2001; Ohio Casualty of New Jersey, Inc. v. Director, Division of Taxation, Docket Nos. 002934-2001, 004464-2001, 004711-2001, and 004713-2001; and The Ohio Casualty Insurance Company v. Director, Division of Taxation, Docket Nos. 002357-2001, 004712-2001, and 004716-2001. The parties selected the captioned American and West American appeals as vehicles for determining the legal issues common to all appeals.

 Neither party presented any evidence that the insurance industry actually lobbied the New Jersey Legislature with respect to the issue before me.

 The actual effective rate will vary inversely with the amount by which an insurer's premium revenue in New Jersey exceeds 12.5% of its total premium revenue. For example, if the insurer derived 25% of its premium revenue from New Jersey, the effective premium tax rate would be 1.05% (12.5% equals one-half of 25%, and one-half of 2.1% is 1.05%). If the insurer derived 37.5% of its total premium revenue from New Jersey, the effective premium tax rate would be 0.7% (12.5% equals one-third of 37.5%, and one-third of 2.1% is 0.7%).

 I reject plaintiffs' contention that Fitzgerald v. Racing Ass’n of Central Iowa, 539 U.S. 103, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003) suggests that the rational basis test should not apply in interpreting N.J.S.A. 54:18A-6 and 17:32-15. There, the Supreme Court considered an Iowa statute which imposed a twenty percent tax on revenues from slot machines on riverboats and up to a thirty-six percent tax on revenues from slot machines at racetracks. In holding that the rational basis test applied for purposes of determining the constitutionality of the statute, the Court distinguished other cases, including Metropolitan Life. I do not read the Court’s one sentence reference to Metropolitan Life as signaling an abandonment or modification of the well-established and repeatedly invoked rational basis test as applied to tax statutes, including retaliatory tax statutes.